1              UNITED STATES DISTRICT COURT

2                 DISTRICT OF NEW JERSEY

3   ELI LILLY AND COMPANY,     .   Case No. 07-cv-3770
                               .
4        Petitioner,           .   NEWARK, NEW JERSEY
                               .   Monday, April 19, 2010
5          v.                  .   10:25 a.m.
                               .
6   ACTAVIS, et. al.,          .
                               .
7        Respondents.          .
    . . . . . . . . . . . . .

8

9                   TRANSCRIPT OF CONFERENCE
                 BEFORE THE HONORABLE MARK FALK
10               UNITED STATES MAGISTRATE JUDGE

11  APPEARANCES:

12  For the Petitioner:        LAURA P. MASUROVSKY
                               CHARLES E. LIPSEY
13                             L. SCOTT BURWELL
                               Finnegan, Henderson, Farabow, Garrett
14                             & Dunner, LLP

15                             MARK J. STEWART
                               In-house counsel, Eli Lilly & Company
16
                               JOHN F. BRENNER
17                             Pepper Hamilton, LLP

18  For the Respondents:

19  SANDOZ                     ERIC I. ABRAHAM
                               Hill, Wallack, LLP
20
                               KEITH V. ROCKEY
21                             Rockey, Depke & Lyons, LLC

22

23  Transcription Service:     King Transcription Services
                               65 Willowbrook Boulevard
24                             Wayne, New Jersey,  07470
                               (973) 237-6080

25  Proceedings recorded by electronic sound recording;
    transcript produced by transcription service.

2

1    APPEARANCES CONTINUED:

2    For the Respondents:

3    APOTEX                      ALAN B. CLEMENT
                                 J. MATTHEW GOODIN
4                                JOSEPH N. FROEHLICH
                                 Locke, Lord, Bissell & Liddell, LLP
5
     MYLAN PHARMACEUTICALS,      THOMAS J. PARKER
6    INC.                        VICTORIA E. SPATARO
                                 Alston & Bird, LLP
7
                                 ARNOLD B. CALMANN
8                                Saiber Law

9    AUROBINDO PHARMA, LTD.      MELISSA E. FLAX
                                 Carella, Byrne, Cecchi, Olstein,
10                               Brody & Agnello, PC

11                               WILLIAM A. RAKOCZY
                                 Rakoczy, Molino, Mazzochi, Siwik, LLP
12
     SUN PHARMACEUTICALS,        JAMES S. RICHTER
13   INC.                        JAMES F. HURST
                                 GAIL J. STANDISH
14                               Winston & Strawn, LLP

15

16

17

18

19

20

21

22

23

24

25

1      NEWARK, NEW JERSEY, MONDAY, APRIL 19, 2010, 10:25 A.M.

2      (Call to Order of the Court.)

3           THE COURT:  All right.  Good morning.  This is Eli

4    Lilly versus Actavis.  It's docket 07-3770.

5           Would Counsel place their appearances on the record,

6    please.

7           MS. MASUROVSKY:  Good morning, Your Honor.  Laura

8    Masurovsky, Charlie Lipsey, Scott Burwell, of Finnegan,

9    Henderson, Farabow, Garrett, and Dunner, of Washington D.C.,

10   for Eli Lilly and Company.

11          And we are accompanied by our in-house counsel for

12   Eli Lilly and Company, Mark Stewart.

13          UNIDENTIFIED MALE:  (Whispers)  John Brenner.

14          MS. MASUROVSKY:  Oh, and -- I'm sorry -- and -- and

15   John Brenner, of course --

16          THE COURT:  Welcome.

17          MS. MASUROVSKY:  -- from Pepper Hamilton.

18          MR. BRENNER:  Not a problem, Your Honor.

19          MS. MASUROVSKY:  Sorry, Your Honor.

20          MR. ABRAHAM:  Good morning, Your Honor.  Eric

21   Abraham, from Hill, Wallack, on behalf of Defendant, Sandoz,

22   and my co-counsel, Mr. Keith Rockey, from Rockey, Depke, and

23   Lyons, of Chicago.

24          UNIDENTIFIED MALE:  I'll let everybody else speak for

25   themselves, Your Honor.  There's quite a crowd here.

4

1          THE COURT:  Okay.

2          MR. CLEMENT:  Your Honor, Alan Clement, from the law

3    firm of Locke, Lord, Bissell, and Liddell, on behalf of

4    Defendant, Apotex.  And with me is Mickey Goodin and Joe

5    Froehlich.

6          THE COURT:  Okay.

7          MR. PARKER:  Good morning, Your Honor.  Tom Parker,

8    representing Mylan Pharmaceutical, Inc.  Your Honor, I'm here

9    also with Vicky Spataro, who's also of the law firm of Alston

10   and Bird.

11         A local counsel, Arnie Calmann, from the Saiber law

12   firm.  Arnie -- Mr. Calmann is currently on the telephone

13   conference with Judge Salas, and he'll be joining us in -- in a

14   few moments.

15         THE COURT:  Okay.

16         MR. PARKER:  Thank you, Your Honor.

17         MS. FLAX:  Good morning, Your Honor.  Melissa Flax,

18   from Carella, Byrne, for Aurobindo Pharma.  With me is William

19   Rakoczy, from the Rakoczy, Molino firm.

20         MR. RAKOCZY:  Good morning, Your Honor.

21         THE COURT:  Good morning.

22         MR. RAKOCZY:  Good morning.

23         MR. RICHTER:  Good morning, Your Honor.  James

24   Richter, of Winston and Strawn, on behalf of Sun

25   Pharmaceutical.  With me is Jim Hurst, from our Chicago office,

5

1  and Gail Standish, from our L.A. office.

2           MR. HURST:  Good morning, Your Honor.

3           MS. STANDISH:  Good morning, Your Honor.

4           THE COURT:  All right.  Good morning.

5           All right, this case has a firm trial date of May

6  18th, as we all know.  Today, we're here for the final pre-trial

7  conference.

8           I said that the parties could bring the final pre-

9  trial order today, and I see it's been delivered to me.  It

10  looks rather lengthy.  And my thought is to go through it and

11  -- with you.  It should be, I would expect, unless there are

12  any glaring problems, that we should be able to accomplish that

13  relatively quickly.

14          I know that Judge Cavanaugh has asked that the trial

15  briefs be filed today.  I have Eli Lilly's trial brief.  Do the

16  other parties have trial briefs?

17          UNIDENTIFIED MALE:  Yes, Sir.

18          UNIDENTIFIED MALE:  Yes --

19          THE COURT:  Okay.

20          UNIDENTIFIED MALE:  -- yes, Your Honor.

21          THE COURT:  I don't know if they're in this package

22  or they're just being delivered to Judge Cavanaugh.  It doesn't

23  matter to me.

24          UNIDENTIFIED MALE:  I believe they were filed and

25  also --

6

1          THE COURT:  Okay.

2          UNIDENTIFIED MALE:  -- believe they were delivered to

3    Judge Cavanaugh.

4          THE COURT:  Then that's just fine.

5          So I think what I'd like to do is get the final pre-

6    trial before you, and we'll go through it.

7                      (Pause in proceeding)

8          THE COURT:  And I'm going to just start flipping

9    through it.  The first, you know, section is jurisdiction,

10   which is fine.

11         Now, your pending and contemplated motions, you have

12   no -- no motions are pending.  But you have *in limine* motions

13   to be filed with the Court on April 26th.  The briefing to be

14   completed by May 3rd; dates that we have discussed in the past.

15         But you don't list the *in limine* motions and/or

16   Daubert motions, which I'm not sure -- I'm troubled by.  But I

17   want to make sure that there are no motions in there that would

18   be magistrate judge-type of motions that would go to discovery

19   issues or problems with discovery, thing(sic) like -- things

20   like that.  Are there any such motions?

21         MS. MASUROVSKY:  Your -- Your Honor, on behalf of

22   Lilly, we believe that there is one that is ripe(phonetic) for

23   your resolution, and -- and that is one of the witnesses that

24   Lilly intends to call live at trial, Dr. Steven Paul(phonetic),

25   is being called.  He was identified as a witness in numerous

7

1    depositions taken before the close of fact discovery.

2    Defendants inquired about him.  They chose not to depose him.

3    And now they're complaining that he should not be called live

4    at twil(sic) -- at trial.

5              He is going to be taken live, because the person who

6    had been intended to be in his place, Dr. Watanobbi(phonetic),

7    passed away last year, and so Lilly will not have the

8    opportunity to take his deposition(sic) -- his testimony live

9    at trial.

10             And so we have intended to call and listed Dr. Steven

11   Paul.  And, in numerous depositions, Defendants inquired about

12   him at length.  Dr. Watanobbi described that he was the person

13   in charge of the development of this drug and reported to him.

14             It's very clear that Rule 26 -- they are -- they are

15   complaining because he wasn't listed on the initial disclosure,

16   under Rule 26.  But Rule 26 is very clear that you only need to

17   supplement in writing if the witness hasn't been otherwise

18   disclosed to the other side in depositions.

19             Mi -- Dr. Paul's name appears on numerous exhibits

20   that they have listed on their exhibit list.  He is the sole

21   author on -- on at least one of them and was listed as a

22   recipient on other of their exhibits.

23             If I may tender up, Your Honor --

24             THE COURT:  Mmm-hmm.

25             MS. MASUROVSKY:  -- I have copies of the depositions

1  in which they inquired about him and were told about his

2  intimate relationship with Dr. Watanobbi in discussions about

3  the development of this drug.

4          THE COURT:  Let's -- let's just hold off for a

5  minute.  This, is it a fact witness or --

6          MS. MASUROVSKY:  Yes.

7          THE COURT:  -- an expert?

8          MS. MASUROVSKY:  Yes, Your Honor, a --

9          THE COURT:  A fact witness.

10          MS. MASUROVSKY:  -- fact witness.

11          THE COURT:  And he was not or he was identified in

12  initial disclosures?

13          MS. MASUROVSKY:  He wasn't listed on the initial

14  disclosures; Dr. Watanobbi was.  But, during the course of

15  discovery, as -- beginning in August of 2008, he was identified

16  by the -- one of the inventors on the patent as being involved

17  in the chain of command and the management of the development

18  of the drug.

19          And then again, Defendants inquired about his role in

20  the development of the drug, of the clinical investigators who

21  conducted the clinical trial for the development of this drug

22  at Mass(phonetic) General Hospital, and they were specifically

23  told that -- and asked about what they discussed with Dr. Paul.

24          The Defendants specifically said, in October of 2008,

25  to Dr. Beterman(phonetic), "Did you discuss Atomoxetine with

9

1   Dr. Paul when you saw him?"  And then Dr. Watanobbi, who was

2   the head of Lilly Research Laboratories, to whom Dr. Paul

3   reported at the time and then Dr. Paul succeeded him and took

4   over from him, was asked by the Defendants, "What was the level

5   of your involvement with Dr. Paul's operations in the

6   Neuroscience's area?"  And -- and there are pages and pages of

7   their discussions about him.

8          The Defendants, in that deposition of Dr. Watanobbi,

9   in October of 2008, introduced a management vote at which Dr.

10  Paul was listed as one of the members of the management

11  committees.  And we have those documents.  They are on the

12  Defendants' exhibit lists.

13         So, as of 2008, they were on notice that Dr. Paul was

14  intimately involved in the discussions at the management --

15  highest management levels of the development of the drug at

16  issue in this trial.  And -- and they chose not to depose him.

17         It -- it's our position, Your Honor, that they could

18  have, and, of course, we would have made him available during

19  fact discovery to be deposed, since they were aware that he was

20  intimately involved and had asked about his involvement in the

21  development of Atomoxetine.

22         And we have offered, subsequently, to make him

23  available for a deposition -- even though we think they -- they

24  forego -- they had forgone that opportunity during the course

25  of discovery, we will nonetheless make him available at -- now

1  for a deposition.

2          THE COURT:  So he wasn't in the initial disclosures.

3  Was he in answers to interrogatories?

4          MS. MASUROVSKY:  He was in the documents that were

5  produced --

6          THE COURT:  In the documents.

7          MS. MASUROVSKY:  And in documents that they

8  introduced at depositions and asked about his role in -- in the

9  documents that they used in the depositions, beginning in 2008.

10          THE COURT:  And when did you first decide to use him

11  at trial?

12          MS. MASUROVSKY:  A --

13          THE COURT:  When did you let the other side know?

14          MS. MASUROVSKY:  When we were contemplating who our

15  trial witnesses were, and we realized Dr. Watanobbi was not

16  available to us anymore because he passed away last year, we

17  realized that we didn't have his live testimony.

18          When we got involved in this case and -- and the

19  Judge ordered us to go put our trial witnesses together for

20  this trial, that's when we pulled together our -- our witness

21  list and -- and identified him as a trial witness, a live trial

22  witness.

23          THE COURT:  And where is Dr. Paul?

24          MS. MASUROVSKY:  He's recently retired as the former

25  head of Lilly Research Laboratories.  He lives in Indiana and

11

1   is available now for a deposition.   We need to check his

2   schedule.   He's a -- he's a fairly-busy person still, but he

3   will make himself available for a deposition now.

4            THE COURT:   And, just briefly, the substance of his

5   testimony would be?

6            MS. MASUROVSKY:   That he's at the management level of

7   the approval of the development of Atomoxetine and -- and was

8   the person to whom the inventors reported and dis -- and

9   disclosed their ideas about the importance of the development

10  of this drug and why it was being developed and -- and those

11  kinds of things.

12           THE COURT:   And that's what Dr. Watanobbi would have

13  testified to?

14           MS. MASUROVSKY:   Yes, Your Honor.

15           THE COURT:   And Wa -- Watanobbi's deposition was

16  taken?

17           MS. MASUROVSKY:   Yes, Your Honor.   And, in his

18  deposition -- and we have it, and I may hand it up, if Your

19  Honor permits -- he went on at great lengths about the role

20  that Dr. Paul played in the development of the decision-making

21  process within Lilly to develop the drug that's at issue in

22  this case.   And his name appeared on the documents that

23  Defendants introduced and put before Dr. Watanobbi as a member

24  of the committee that approved some of the key positions in --

25  in the development of the drug.

1          THE COURT:  Okay.  This is the first I'm hearing of

2   this that I -- that I'm aware.  Is this a motion that you

3   intend to file -- or someone intends to file as an in limine

4   motion, has it been -- is it in writing anywhere or --

5          MS. MASUROVSKY:  Uh.

6          THE COURT:  -- where does --

7          MR. CLEMENT:  Your Honor --

8          THE COURT:  -- it stand?

9          MR. CLEMENT:  -- if I may?  It's --

10         THE COURT:  Yeah.

11         MR. CLEMENT:  -- Alan Clement.

12         THE COURT:  Sir.

13         MR. CLEMENT:  Yeah, we just found out about this when

14  the listing of fact witnesses occurred about a week ago.  We

15  were never notified about Dr. Paul being a potential witness.

16  He wasn't in their initial disclosures.  They never -- they

17  have still not supplemented their initial disclosures, never

18  supplemented their initial disclosures to include him, never

19  identified in any interrogatory.

20         The fact that he was on a couple of documents -- I

21  think Counsel said he was on -- his name is on one -- he

22  authored one document.  We -- we deposed everyone who was very

23  much intimately involved.  If he was up -- in upper-level

24  management making, you know, higher decisions, you know, he

25  wasn't involved in the real development of the product here.

13

1       You know, if we tried to depose every single person

2  that appeared on a document that looked like they might have

3  relevant information, I mean, we never would have finished the

4  depositions.  It -- you know, we deposed the people that we

5  saw, including Dr. Wabin(sic) -- Watanobbi as having, you know,

6  relevant information.

7       Dr. Watanobbi passed away ten months ago.  This is

8  the first we're hearing about it.

9       You know, we had an expert, Dr. Shukla(phonetic), who

10  we brought to your attention.  Dr. Shukla, we found out, was

11  ill, w -- might not make it trial.  What did we do?  We did the

12  right thing.  We went and told them we have an expert who is

13  ill and is probably not going -- and we did this, you know, as

14  soon as it happened.  We didn't wait until the eve of trial to

15  surprise us, prejudice us.

16       We have to go and take a deposition.  We're going to

17  try and get our experts ready for trial.  We have to run out in

18  the middle and take a deposition of a fact witness.  We don't

19  even know the document -- I mean, when they said, "Dr. Paul,"

20  none of us h -- knew who he was.  We couldn't even remember a

21  single document, you know, his name being on.

22       I think it's over-characterizing that we went on for

23  pages and pages in the deposition testimony about Dr. Paul.

24       You know, again, you know, this is s --

25       UNIDENTIFIED:  (Whispers) -- also designating

14

1  Watanobbi.

2      MR. CLEMENT:  Right, okay, and they also des --

3  that's right, they have the de -- the deposition designations

4  of Dr. Watanobbi.  They can just put those into evidence and --

5  and cover the same t -- you know, the same subject matter.

6      I think they -- they -- you know, we -- we designated

7  testimony for Dr. Watanobbi.  They cross-designated.  Pretty

8  much, the whole transcript, I think, is coming in.

9      So, at this point, I just don't see the need.  I

10 think there's huge prejudice to Defendants to have to take this

11 deposition.

12     Have -- I don't even know that they've searched Dr.

13 Paul's records in his office or on his computer.  Do we have

14 all his emails?  Do we have all his documents?  I don't know

15 what the status is of that.  We didn't pursue that, you know.

16     So I -- I just don't know what the s -- the status is

17 right now as -- if we had to take the deposition, we'd be at a

18 great disadvantage.

19     MS. MASUROVSKY:  Your Honor, if I may respond

20 briefly?

21     THE COURT:  Sure.

22     MS. MASUROVSKY:  The -- Rule 26(e)(1)(a) makes it

23 very clear, as do the comments to this rule, that there's no --

24 no need to formally supplement a Rule 26 disclosure if the

25 additional or corrected information has otherwise been made

15

1    known to the party.

2          And, in the annotations to the 93 amendments, the

3    Federal Rules make it very clear that there's no need for that

4    to happen, particularly in -- when the other information has

5    been made known as when a witness not previously disclosed is

6    identified during the taking of a deposition.

7          And what Dr. Watanobbi said, in response to the

8    Defendants' questions when they asked him how was the Lilly

9    Research Laboratories organized, he said one -- one of the

10   areas that reported to me was Neurosciences and the person for

11   -- res -- responsible for Neurosciences who reported to me was

12   Dr. Steven Paul.

13         And then Defendants said, "Well, let's talk about the

14   Neurosciences' section.  Dr. Paul was the head of it.  He

15   reported to you."  "Uh-huh."  "Who were the people under him?"

16   And then -- then they questioned Dr. Watanobbi some more.

17   "Okay, what was the level of your involvement with Dr. Paul's

18   operation in the Neurosciences' area?"  And then they marked,

19   at the deposition, the 1997 PTAC vote, which has Dr. Paul's

20   name as a member of the committee on it.

21         So it's not true that they were not aware of the

22   deposition -- the documents that his name was on.  And they

23   asked, "Who brought this to your attention?"  "Okay, it was

24   either Steven Paul, who reported to me, or it could have been

25   Dr. Gary Tollefson(phonetic), one of the inventors."  And then

1   more pages.

2          "Now, does this," Defendants are asking Dr.

3   Watanobbi, "Does the seeing this list of names help you

4   determine whether the initial report of Atomoxetine" -- that's

5   the drug at issue in this case -- "brought to your attention as

6   a potentially efficacious drug in the treatment of ADHD" --

7   that's Attention Deficit Hyperactivity Disorder, the disorder

8   at issue -- "assist you in recalling, as between Dr. Paul and

9   Dr. Tollefson, who it was that brought it to your attention?"

10  And Dr. Watanobbi answers, "I probably knew through a Lilly

11  colleague, such as Dr. Paul, that he was a prominent research,

12  clinical research psychiatrist."

13         More pages, "Do you recall expressing to any

14  individual what you described today?"  "I've probably expressed

15  it to Dr. Paul and Dr. Tollefson."  And on and on and on.

16         Let me just elaborate a bit here.  "Do you -- do you

17  -- you have a specific recollection of having expressed this to

18  Dr. Paul?"  This was a question from the Defendants, so they

19  certainly knew enough to ask about him.  "Yes, I used to meet

20  with Dr. Paul about once a week when we were both in town,

21  since he was one of my direct reports.  We'd have maybe an

22  hour, one-on-one, and he would update me on a number of things:

23  Progress in certain projects, issues that we were developing.

24  We would talk about them."  Pages and pages of how intimately

25  he was involved.

1          And it wasn't just at his deposition that they asked

2   about him, Your Honor.  At the inventor's deposition, they got

3   his name, a few months before that.  "Who is Steven Mark Paul?"

4   That's from -- the Defendants' question from Mr. Clement.

5   "Steven Paul, at the time, was, as I best recall, about that

6   time, would have been -- I think he was the Vice President of

7   Neuroscience."  Okay, that was in August of '08, so the

8   Defendants certainly knew about him then.

9          And then they asked the Clinical Research

10  Investigator, Dr. Spencer, "I'm just wondering who at Lilly, if

11  you recall?"  "So," answers Dr. Spencer, "John

12  Haliganstine(phonetic), Steven Paul.  I think I have his name

13  right.  Steven Paul is a senior person there."  They certainly

14  understood that -- from Dr. Spencer, that he thought Dr. Paul

15  was a senior person at Lilly.

16          Then they also asked Dr. Beterman, his co-

17  investigator, "Did you have any discussions with Dr. Watanobbi,

18  and what about Steven Paul?"  W -- and, again, this is now

19  Aurobindo's asking, Mr. Venchel(phonetic), "Will you tell me

20  what -- generally what the discussions were with Dr. Paul?"

21  So, again, they had many, many, many opportunities to know who

22  Dr. Paul was.  They were so informed.

23          And they have, in fact, called, from the hundreds of

24  thousands of documents that we've produced, documents on which

25  DTX-41 -- that's their Defendants' deposition -- Defendants'

18

1    Exhibit forty -- Trial Exhibit 41 -- a document in which Steven

2    Paul is listed as the sole author.

3           And, again, on DTX-123, it identifies Dr. Paul as a

4    member of the Project Team Approval Committee for Atomoxetine.

5           He's listed on an email that they've chosen to list

6    on their Trial Exhibit List 118 as the recipient of an email

7    from Dr. Watanobbi to the inventors, congratulating them and

8    recapitulating the whole history of the development.

9           He's on another chain of emails later on that they

10   have chosen for their Trial Exhibit List, Defendants' Trial

11   Exhibit 402.

12          They honestly, Your Honor, could not possibly claim

13   surprise, when they were told about his involvement at the

14   highest level of Lilly's Management.

15          And it was their deposition of Dr. Watanobbi, Your

16   Honor.  We were not required to and -- and typically wasn't --

17   one doesn't take the direct examination of your highest

18   management executives, while the other side is taking their

19   deposition.  So we -- we were -- we will be severely prejudiced

20   if we cannot present to the Court the direct examination that

21   we would take of the highest level of Lilly executives

22   responsible for the development of Atomoxetine.

23          THE COURT:  Mmm.

24          MR. CLEMENT:  Your Honor, if I may?

25          MS. MASUROVSKY:  So with -- so, in closing, I don't

1  think there is prejudice to the Defendants.  They could have

2  and probably should have taken Dr. Paul's deposition.  They are

3  scrambling now because they didn't.

4          And, with all due respect, we will make him

5  available.  And there is no prejudice.  They knew about him.

6  They -- we've produced all the documents.  They have chosen

7  several of those to be on their exhibit list.

8          And, in fairness, I think the prejudice will be to

9  Lilly and not to the Defendants if he's precluded from

10 testifying at trial.

11         THE COURT:  Thank you.

12         MR. CLEMENT:  Your Honor, if I can respond?

13         THE COURT:  Sure.

14         MR. CLEMENT:  First of all, if -- they say we knew

15 about it; they certainly knew about Dr. Paul.  It's their

16 documents, their -- their -- their, you know, their management.

17 They could have put him in the 26(a)(1) statement as having

18 knowledge.  They could have put him in the interrogatories as

19 having knowledge.  They were the ones who chose not to, and now

20 they're trying to spring us with this.

21         Everything that Ms. Masurovsky just read to you was

22 all very general.  There was nothing in there that showed that

23 Dr. Paul had any intimate knowledge of things.

24         And I think, Ms. Masurovsky, if I could have Exhibit

25 123 that you were referring to?

20

 1      MS. MASUROVSKY:  Certainly.  Now, let me give you an

 2  unmarked-up copy.

 3                      (Pause in proceeding)

 4      MS. MASUROVSKY:  Here you go.

 5      MR. CLEMENT:  Your Honor, this is the list of names

 6  on that exhibit.  I think Dr. Paul is -- I don't know, he's

 7  some -- he's somewhere in -- I guess somewhere in here.  But, I

 8  mean, that's a whole list of names.  Are we supposed to depose

 9  everyone on that list?

10      I mean, sh -- Ms. Masurovsky's pulled off, what, five

11  documents with -- with his name on it?  We deposed the people

12  who they told us to -- to look at.  They gave us, you know,

13  their initial disclosures.  They had a duty to supplement.

14      We told them when Dr. Shukla was ill.  They've had

15  ten months to tell us, Your Honor.

16      THE COURT:  So when did the Defendants first find out

17  about the proposal to use Dr. Paul as a witness?

18      MR. CLEMENT:  A week ago, Your Honor.

19      THE COURT:  A week ago.

20      MR. CLEMENT:  Yes.  And we're ready -- we're ready to

21  file a motion *in limine*.  We could do it as -- as soon as Your

22  Honor would like.

23      THE COURT:  Okay.  Well, I think it -- it is worth

24  being briefed.  And I think you should do it immediately,

25  before the -- well -- well, where are we?  We're April 19th, so

21

1   we do -- I guess by April 26th will be fine.

2                    (Pause in proceeding)

3            THE COURT:  And I guess I have to ask Plaintiff:  Why

4   wait til a week ago?  That it just seems -- it has a little --

5   a little hint of sandbag in it, to me, just hearing -- given

6   that the case has been under such a -- a focus, under such a

7   microscope.

8            We talked about the trial date, et cetera.  And Dr.

9   Watanobbi passed away, you know, ten months ago, according to

10  the Defendants.  It seems a week before the final pre-trial --

11  it concerns me.

12           And -- and it's no great prejudice to -- to simply

13  have someone take a deposition before a trial, but we have a

14  final pre-trial.  I don't know how it would impact what's in

15  here, what's in the trial briefs, and everything.

16           So what's -- what's the explanation for that?

17           MS. MASUROVSKY:  Your Honor, as I think Your Honor

18  may recall, we have had a number of very difficult witness

19  availability issues, because of the scheduling issues.  We had

20  not anticipated that we would have this trial at this date.  We

21  had been discussing with the Defendants an August trial date.

22  And our understanding that we had worked that out had focused

23  our discussions with various witnesses on August.  And then we

24  had this conflict with the Canadian trial.

25           And so it has been a flurry of activity for us to

22

1    find out what everybody's schedules are.  And we have done

2    that, Your Honor, with all deliberate speed, and as

3    conscientiously as we could.

4          And this was when we knew that he was, in fact,

5    available.  He's recently retired from Lilly, so.

6          There was no effort to sandbag.  It has taken us this

7    much time to pull our -- our availability and witnesses

8    together for this trial and figure out what -- what -- what we

9    would do, in light of everyone's schedule.  And we've been

10   doing our best to deal with that as -- as quickly and as

11   expeditiously as -- as we could and as conscientiously as we

12   possibly could.

13         We -- we remain, Your Honor, in a quandary on some of

14   these scheduling issues with our witnesses.  Dr. Paul is not

15   one of them, but that is something we'd like to discuss later

16   this morning with Your Honor.

17         THE COURT:  Understood.

18         MR. CLEMENT:  Your Honor, if I may just respond?

19         THE COURT:  Sure.

20         MR. CLEMENT:  Just briefly.  It just seems a little

21   -- I -- I don't understand.  She's saying the witness

22   availability, but Dr. Watanobbi, with all due respect, passed

23   away ten months ago.  They could -- that -- that can't be all

24   -- the -- the -- the variation of when the trial was going to

25   oc -- occur cannot have factored into that at all.

23

1          THE COURT:  Let me ask a -- a few other questions,

2    and then we will let you brief it and we'll try to decide it

3    quickly.

4          But Dr. Watanobbi was listed as a fact witness in

5    this case, correct?

6          MS. MASUROVSKY:  Yes, Your Honor.

7          THE COURT:  And was there a description of his area

8    of knowledge?

9          MS. MASUROVSKY:  Yes, Your Honor.

10         THE COURT:  Because I -- I don't have anything before

11   me.  But usually there would be, well, what is -- what is his

12   area of knowledge.

13         And then Dr. Watanobbi's deposition was taken.

14         MS. MASUROVSKY:  Yes, Your Honor.

15         THE COURT:  And the Defendants have said that you can

16   use the -- the read-ins from his deposition.  And of course you

17   say, well, it wasn't a trial deposition; we weren't questioning

18   our own witness; they were questioning their witness.  But the

19   -- I thought I heard you say, before, that Dr. Paul wouldn't

20   say anything different that Dr. Watanobbi.  Is that true or

21   not?

22         MS. MASUROVSKY:  Maybe I wasn't clear in what I meant

23   to say.  He would cover the same areas, but we had not asked,

24   at Dr. Watanobbi's deposition, the areas that we would have

25   asked Dr. Watanobbi at trial.

24

1       What I meant is Dr. Paul would cover the areas that
2   we had anticipated asking Dr. Watanobbi on his direct
3   examination at trial, but we did not ask at his deposition,
4   because it was their deposition and we were preparing for the
5   deposition, but not for the trial testimony.
6       And there are areas of direct examination that an
7   upper-level management Lilly executive would cover at our trial
8   that, if Dr. Watanobbi were here, he would cover, but Dr. Paul
9   could equally well-cover.  And that was the reason for our --
10  when we pulled together who could be a trial, that was the
11  reason for our naming him on our Trial Exhibit List.
12      And we -- we did not come into this case til January.
13  And, again, our sights were on a -- a Fall-type trial date.
14  And it has taken us awhile to pull together who could be there
15  in the Spring.  And -- and that is the only reason we haven't
16  identified who are trial list was earlier.  And that was our
17  time for exchanging the witnesses, and that's when we did it.
18      THE COURT:  What's the great prejudice, Defendants,
19  if I allow a deposition --
20      MR. CLEMENT:  Well, we're trying to get --
21      THE COURT:  -- and this witness --
22      MR. CLEMENT:  -- ready for trial, Your Honor, with
23  our experts.  We have meetings with our experts scheduled over
24  the next couple weeks.
25      You know, we've put together the pre-trial brief

1   based on what we knew from Dr. Watanobbi.  We're going to have

2   to send someone over to, you know, depose Dr. Paul, look at all

3   the documents, get -- get that all together.

4            I don't -- I'm --

5            THE COURT:  What -- what do you mean the documents?

6   There -- there shouldn't be any different documents.  I would

7   --

8            MR. CLEMENT:  Well, that's what we don't know.  We

9   don't know that they've even produced all the documents that

10  Dr. Paul was on.  It -- it -- you know, and we're not so sure

11  that all the documents that he was on are on the exhibit list.

12  We may now want to put new documents onto the exhibit list,

13  based on documents we find with Dr. Paul's name that Dr.

14  Watanobbi wasn't on.

15           You know, when we asked about Dr. Paul during these

16  depositions, it was just to get the overall sense of who was

17  where in Lilly.  It wasn't a -- you know, a discovery-taking

18  type deposition that we were going -- focusing on for use at

19  trial.

20           You know, I think that we have been sandbagged here.

21  They -- they've known for ten months that Dr. Watanobbi was not

22  going to trial.  The fact that their -- switch counsel again in

23  January shouldn't be a prejudice to Defendants.

24           We're trying to get ready for trial.  We have a lot

25  -- lot of work to get done.  As you see, it's a -- it's a big

26

1    pre-trial order, and we have a lot of work to do.

2          THE COURT:   True, but I'm confident you have the --

3    the staffing to do it.

4          But I -- I think it -- it should be briefed and -- as

5    quickly as possible.

6          And my recommendation to the Plaintiff is, if this is

7    very important to you -- and of course I'm not deciding the

8    issue right now.   I don't think it's fair to the parties or

9    even fair to the Court to decide it just on what I'm hearing

10   now -- the Plaintiff might consider an extremely-detailed

11   proffer, including questions and answers that you would expect

12   to have from Dr. Paul and -- as part of your brief.

13         And then that may enable the Court to determine how

14   big a deal this is, one.   And, two, whether the Defendants

15   really will oppose it with such -- such ardor, shall we say,

16   given -- it -- it may -- it may not be that significant.   I

17   don't know.

18         But it seems awful late in the game.   But, then

19   again, it's a month before trial.

20         Go ahead, Mr. Clement.

21         MR. CLEMENT:   I just have one request --

22         THE COURT:   Yes, sir.

23         MR. CLEMENT:   -- if you're going to let them do a

24   question and answer in response to our motion *in limine*, that

25   we would just like a -- a sh -- a short period of time to put

27

1    in a reply, maybe a day or two after that?

2         THE COURT:  Well, I -- I think I'm going to decide it

3    right on -- it can -- it -- we're getting too close to the

4    trial.  If I'm going to allow a deposition, it's going to be in

5    all of your -- your interests that we do it --

6         MR. CLEMENT:  That's why I'm only saying a day or two

7    for the reply.  I mean, I wasn't asking --

8         THE COURT:  Yeah, yeah.  I don't --

9         MS. MASUROVSKY:  We --

10        THE COURT:  -- I don't think we need --

11        MS. MASUROVSKY:  -- we have no objection.

12        THE COURT:  I -- I don't need a reply.

13        MS. MASUROVSKY:  Okay.

14        UNIDENTIFIED MALE:  I assumed Your Honor wanted

15   simultaneous briefing on --

16        MS. MASUROVSKY:  (Whispers)  No, no, he's given -- no,

17   given us the schedule.  He's given --

18        UNIDENTIFIED MALE:  (Whispers) Make the --

19        UNIDENTIFIED MALE:  (Whispers) Make the motion.

20        MR. CLEMENT:  Okay, then maybe they can make the

21   motion first, with the questions and answers, and we'll reply

22   to that.

23        THE COURT:  I think that's a good idea.  I think you

24   should put --

25        UNIDENTIFIED MALE:  It's our mo -- our motion, Your

1    Honor.

2            THE COURT:  Absolutely.

3            UNIDENTIFIED MALE:  Thank you.

4            THE COURT:  Yeah --

5            MR. CLEMENT:  Thank you, Your Honor.

6            THE COURT:  Are there any other issues out there that

7    are discovery-related or anything like that?  Because you don't

8    list your *in limine* motions.  How many are there?

9                         (Pause in proceeding)

10           MR. CLEMENT:  I think we have six or seven, Your

11   Honor.

12           THE COURT:  Okay.  I think you should make a list --

13   it doesn't have to be today, but in the next day or so -- if

14   you haven't done so.

15           Have you -- have you made a list for Judge Cavanaugh?

16           MR. CLEMENT:  We have not made a list, but we know --

17   I think we know what motions we're making at this point.

18           THE COURT:  Well, normally, we -- we list them in the

19   final pre-trial order.

20           Now, I know we -- we're dealing with a -- a very-

21   specific briefing schedule that Judge Cavanaugh has

22   established.  But I think it would be good to know right away

23   --

24           MR. CLEMENT:  Okay, we --

25           THE COURT:  -- if you'll make a list --

29

```
1              MR. CLEMENT:  We --

2              THE COURT:  -- both sides, of your in limine motions,

3    okay?

4              MS. MASUROVSKY:  Yes, Your Honor.

5              MR. CLEMENT:  We can certainly do that.

6              THE COURT:  Thank you.

7              All right, we'll just keep going through the final

8    pre-trial.  Stipulation of facts speaks for itself.  Let's see

9    how many pages that goes for.

10                    (Pause in proceeding)

11             And then we come to I guess up to 12, you have the

12   contested facts.  Anything to be discussed there?  I would

13   expect not.

14             Witnesses, any other problems with the witnesses?

15   For example, Plaintiff's witnesses, any --

16             MS. MASUROVSKY:  Yes, Your Honor.

17             THE COURT:  Okay.

18             MS. MASUROVSKY:  Thank you very much, Your Honor.

19             THE COURT:  Yup.

20             MS. MASUROVSKY:  As -- as Judge Cavanaugh's trial

21   rules contemplate, we may ask Ju -- Judge Cavanaugh to take Dr.

22   Plitska(phonetic), who's a treating physician in his practice

23   -- treating patients with ADHD, before he needs to get back to

24   his -- to them, he's arranged for coverage through May 28th.

25   And we think that should be sufficient, given the Judge's trial
```

30

1    schedule.  But, just in the event it's not, we wanted to flag

2    that as an issue; that he has patients to get back for.  Thank

3    you, Your Honor.

4             THE COURT:  Okay.  I'm sure he'll take that up.

5             MS. MASUROVSKY:  And I have one more witness conflict

6    issue --

7             THE COURT:  Sure, go ahead.

8             MS. MASUROVSKY:  -- to raise with the Court.  And

9    that is something we've raised before, and that is the Canadian

10   trial involving the same drug.  And one of the parties, a

11   Canadian counterpart, defendants here, involves two of Lilly

12   employees to testify at that trial, Dr. Hines(phonetic) and Dr.

13   Allen(phonetic).

14            And they will be needed in Canada the week of May

15   31st.  Again, we hope that won't be a problem, given the trial

16   schedule, but I wanted to flag it just in case there was any

17   issue.

18            We would ask that they simply be taken out of turn,

19   if necessary.  But, hopefully, it won't be necessary.

20            THE COURT:  Counsel?

21            UNIDENTIFIED MALE:  Your Honor, on a related issue,

22   actually, as long as we're talking about the -- the fact

23   witnesses, on page 343.  As you see, Lilly has listed in

24   somewhat vague fashion they may call any number of one, two,

25   three, four, five, six, seven fact witnesses.

31

1          The Defendants, just to prepare for trial, Your

2    Honor, the Defendants were wondering is it possible to get an

3    order, in fairly short order here, ordering Lilly to tell us

4    which one of these are actually coming to testify live, so that

5    we know, Your Honor.

6          The Defendants, I believe, have not -- the Defendants

7    -- the Defendants have identified no fact witnesses live for

8    trial, but the Defendants would like to know who is Lilly

9    bringing live for trial and when.

10         Lilly is all concerned about these people's

11   schedules, when it comes to the Canadian litigation.  Well, we

12   think it's only fair, Your Honor, if that's going to be taken

13   into consideration, Defendants would like to know, for our

14   preparation and schedules, which one of these witnesses are

15   coming and when.

16         And especially if we need to call them for our case

17   in chief, which we may very well have to, Your Honor, both in

18   our case, question them in Lilly's case, and, who knows, we may

19   even want them for rebuttal.  So we need to know who is going

20   to be in New Jersey and when.

21         THE COURT:  Well, this sort of order is relatively

22   routine as being the province of the -- the trial judge.  I

23   think there's a certain issue of reasonableness.

24         But, Plaintiff, what do you have to say about that?

25   When can you identify who you're going to call?

32

1            MS. MASUROVSKY:  Your Honor, it partly depends on

2    what proof they put on at trial.  They're going first.  And, if

3    they do not put on any evidence on certain issues, we will not

4    need to call certain witnesses.  It really depends on how they

5    try their case.

6            And, if they'd like to tell us now what order and who

7    and what issues they will try.  I mean, we have some motions

8    which may address that, *in -- in limine* motions, that may

9    change the contours of the trial and who will come, depending

10   on the rulings on those motions.

11           But it -- it really depends on how they try their

12   case and whether we feel witnesses are necessary to rebut their

13   case if --

14           THE COURT:  We had discussed the order of proof, of

15   course, in this case before.  Is that going to be a part of --

16   an *in limine* motion?

17           MS. MASUROVSKY:  Well, there is one aspect of it that

18   we would like to raise as a motion, Your Honor, if the Court

19   doesn't rule on it today.  And that is you had advised us that

20   Judge Cavanaugh has already ruled that the Defendants get to

21   put on their proof first, their case in chief first.

22           We would like, consistent with Judge Cavanaugh's

23   prior rulings in the Novartis and Pfizer cases last year, in

24   such cases, to allow the patentee to put on a backdrop of the

25   invention tutorial, because of the complex city(phonetic) of

33

1    the science is appropriate for a short tutorial at the

2    beginning of -- the outset of the case.

3         So we'd -- we would request the Court's authorization

4    to do that, as is typical in -- in what Judge Cavanaugh has

5    ruled on.

6         THE COURT:  Is that going to be one of your *in limine*

7    motions?

8         MS. MASUROVSKY:  If -- if the Court would give us

9    permission to go ahead with that, we could schedule that now,

10   or we'll bring it by motion.  That was one of the things we

11   wanted to raise.

12        THE COURT:  Well, you made a record of asking for it.

13   I think it's a, you know, a legitimate request.  But it's

14   something that's going to be decided by Judge Cavanaugh.  So I

15   think you better file a motion on that or memorialize it

16   somehow.

17        MS. MASUROVSKY:  Thank you, Your Honor.

18        THE COURT:  Counsel?

19        UNIDENTIFIED MALE:  Your Honor, putting -- we --

20   putting aside the tutorial issue --

21        THE COURT:  Yeah.

22        UNIDENTIFIED MALE:  -- we've laid out in excruciating

23   detail what our case is going to be; the theories and the

24   issues that we're going to try.  Lilly knows what they are.

25        So to say that they can't tell us who these fact

34

1    witnesses are and when they're going to show up because they

2    don't know what our case is going to be is -- is simply not

3    true, Your Honor.

4           And you can always say, well, it'll depend on their

5    case, whether we bring them in live.  And then that sandbags

6    us, because we don't know whether we can use them in our case

7    in chief.

8           If they're going to bring these people live, we

9    should have them available for the whole case, not just for

10   Lilly to sit back and spring them on us at the last second.

11          THE COURT:  Well, I mean, the -- the -- the idea is

12   fairness to both sides.  And, just as a practical matter in

13   trying cases, it -- it helps to know.

14          What -- what do you propose?

15          UNIDENTIFIED MALE:  That we would prop --

16          THE COURT:  I mean, that your -- you would have to

17   comply the same way.  In other words, Counsel, you -- you said

18   that, if -- if -- if Defendants would advise who they're going

19   to call and when and in what order --

20          MS. MASUROVSKY:   Well, Your Honor --

21          THE COURT:  -- I mean --

22          MS. MASUROVSKY:  -- if we win on some of our motions

23   in limine, there will be no need for some of these witnesses.

24          We have withdrawn commercial success as one of the

25   issues in the case.  We think that should eliminate a number of

35

1   their expert witnesses and; therefore, there would not be any

2   need for fact witness testimony on that issue.  That would

3   remove some of the names.  But we don't know yet.

4        If they fail to prove their case in their case in

5   chief, it would not be necessary for us to bring a -- an

6   opposing witness to -- to detail the facts, if we feel they

7   have not brought forth evidence to meet their burden.

8        It is their burden to prove invalidity or

9   unenforceability.  And, if, at the close of their evidence, we

10  feel that we have won our case, we would not need to bring a --

11  a fact witness.

12       THE COURT:  I don't think that's really answering the

13  question.  I mean, the -- the -- the question really is -- and

14  I'm not ordering it today, I -- I must say.  I think it's a

15  reasonable request that -- in my experience in trial of cases,

16  at some point, the parties should say.

17       But the -- the way to look at it is, assuming that

18  you lose your motions and that they proceed with their case as

19  they've identified, which of these witnesses is going to be

20  called?  That's the way to think about it, rather than if you

21  win your case.

22       I mean, sure, if I don't -- I mean, I don't even know

23  what the motions are; they're not listed here, so.

24       I'm going to defer the issue.  I think the parties

25  should confer on this.  Usually, we agree on this by -- the

36

1   parties agree on when they're going to disclose the -- the

2   actual witnesses that are going to be called.  And we're a

3   month before trial, and I think there is a date before trial

4   when this should be done.  I don't feel strongly that today is

5   the date, but I appreciate the request.

6            I'd ask that you confer on it and get back to me, let

7   me know.

8            MS. MASUROVSKY:  We will do that, Your Honor.

9            THE COURT:  Okay.  Any other witness issues?  No,

10   okay.  Bear with me one second.

11                     (Pause in proceeding)

12            THE COURT:  Any expert witness issues?  That -- I --

13   there may be some obviously that are going -- going to be

14   addressed in your *in limine* motions.  Nothing else.

15            Depositions, you've identified read-ins.

16            Exhibits, how about document problems?  Are there any

17   -- take the Plaintiff's document -- exhibit list, are there any

18   documents there that Defendants contend they've not seen before

19   or weren't produced in discovery?

20            UNIDENTIFIED MALE:  Your Honor, there are a number of

21   documents that we did see when we were going through the

22   exhibit list that had not been produced before.

23            We objected to those under the Federal Rules of Civil

24   Procedure, mostly.  Because, if they're going to be used in the

25   trial, they should have been produced during discovery.

1          THE COURT:  I agree.  Have you conferred on this at

2    all?

3          UNIDENTIFIED MALE:  We have not conferred.  I --

4          THE COURT:  How many are --

5          UNIDENTIFIED MALE:  -- we just got these things

6    together last, you know --

7          THE COURT:  I understand, but, you know, this is more

8    of a, once again, a magistrate judge-type issue.  I'd like to

9    help Judge Cavanaugh, so he doesn't have to deal with that

10   issue at trial.  So how many are there?

11         UNIDENTIFIED MALE:  Well, that's the thing; I don't

12   know how many of those they're actually going to introduce.  So

13   we were going to do it on a document-by-doc -- but there was --

14   there was quite a number of them, Your Honor.

15         THE COURT:  Are you familiar with this, Counsel?  Do

16   you know what --

17         MS. MASUROVSKY:  Your Honor, I think he's referring

18   to the publications.  Both sides added publications to their

19   exhibit list.  And I think these are -- they're either

20   publications that will come in as prior art, and we will confer

21   about what's going to come in or not, or -- or they won't,

22   because some party has an objection.

23         I don't -- I don't think these are documents that

24   needed to have been produced in discovery.  These are all

25   public-record documents that were available to both parties --

38

1  are part of the literature that both sides have drawn upon.

2  And I think that we can, in the process of getting ready for

3  trial, work through or confer about our issues.  And we will --

4  we have -- we've stated -- we have noted our respective

5  objections on the exhibit list.

6         THE COURT:  Yeah, but I'm not going to have Judge

7  Cavanaugh, at a trial of this magnitude, dealing with discovery

8  question "X," and one side saying this should have been

9  produced in response to discovery and one shouldn't have been

10  produced.

11         And so --

12         UNIDENTIFIED MALE:  And, Your Honor, if it's prior

13  art and it's relevant, it should have been produced.

14         I -- I don't think that we have any documents on our

15  exhibit list that are publications that have not been produced

16  to Lilly before.  I -- I certainly don't recall any, as I sit

17  here now.

18         I do recall going through their list and seeing a

19  hundred or so of these where we had to make FRCP ob --

20  objections on the list.

21         MS. MASUROVSKY:  Well, Your Honor, this is the first

22  I'm hearing of it.  They could have brought it to our attention

23  over the time period that we've been exchanging numerous

24  communications and correspondence, and they haven't.  If they

25  have some beef about it, they should let us know and we'll try

39

1    and work through it.

2          THE COURT:  Well, I'll deal with it.  How about

3    Plaintiff; does Plaintiff have any similar problems with

4    Defendants' list?

5          MS. MASUROVSKY:  Yes, Your Honor, we have a document

6    that will be the subject of a motion, where we had asked --

7    they had it on their exhibit list as both a -- an original that

8    was produced to them from the government in response to a

9    Freedom of Information Act request from the F -- FDA, Food and

10   Drug Administration, and they also had a copy of that document,

11   which they represented to be authentically a copy of the

12   original.

13         They pulled both off their exhibit list.  The copy is

14   on our exhibit list.  We asked them to bring the original to

15   court, so that we would eliminate any authenticity objection

16   that they might have.  They refused.  They maintain an

17   authenticity objection, among others.  And so that will be the

18   subject of a -- of a motion.

19         We -- we don't understand their refusal to bring the

20   original and had asked the Court to require them to make it

21   available to us.

22         UNIDENTIFIED MALE:  Your Honor, if I may respond?

23         THE COURT:  Sure.

24         UNIDENTIFIED MALE:  It's not on the Defendants'

25   exhibit list.  We've taken it off.  It was -- this is a

40

1   document that Lilly -- it's -- it's an IND(phonetic) that they

2   paid for.  They could have obtained it themselves.  It's a

3   public document.

4          One of the other defendants, who's no longer in the

5   case because they've entered into a stay with Lilly, was the

6   defendant who made the Freedom of Information Act request to

7   get the document.  It's not one of these Defendants' documents

8   per se.

9          So, while we did have copies, do we have

10   riven(phonetic) copy?  I mean, it's -- it's -- it's te -- it

11   was -- it was one of the other defendants who had made the

12   request and had the document and actually produced the copy to

13   Lilly.  It's not one of the Defendants currently sitting here.

14                  (Pause in proceeding)

15          THE COURT:  But the Defendants are maintaining --

16   it's coming to me awful fast -- the Defendants are maintaining

17   an authenticity objection?  Is that --

18          UNIDENTIFIED MALE:  I -- I'm not -- I'm not a hundred

19   percent -- I don't have that in front of me.  If we made a -- I

20   don't know, did we made an authenticity objection to it?

21          THE COURT:  I think this one -- I mean, we're --

22   we're letting you have until April 26th to brief these *in limine*

23   motions, and I think that includes the one -- well, perhaps we

24   should revisit the -- the dates on the -- the one that was the

25   magistrate judge-type issue, which is your Dr. Paul issue.

41

1          This is another one that I would like to see.  Maybe
2   I can resolve this before trial.
3          So, at the end of our proceeding, we'll -- we'll
4   figure out what to do with the -- these two *in limine* motions.
5   I'm certainly going to want this delivered to my chambers
6   directly -- whenever we say it's due -- and I'll decide it.  I
7   -- I just can't -- it doesn't seem like a big deal to me.  If
8   you -- do Defendants have this document?
9          UNIDENTIFIED MALE:  We can certainly obtain it.
10         THE COURT:  You can obtain it.
11         UNIDENTIFIED MALE:  Yeah, we can get it from --
12         THE COURT:  Is it burdensome?  Is it expensive?
13         UNIDENTIFIED MALE:  No, we'll -- I mean, we can
14   confer with them on it.
15         THE COURT:  I can't see --
16         UNIDENTIFIED MALE:  I don't know -- I don't know that
17   we have an authenticity --
18         THE COURT:  I mean, they could subpoena the doc -- it
19   would seem to me you could subpoena it for production at trial.
20         UNIDENTIFIED MALE:  Right, I --
21         THE COURT:  I don't see --
22         UNIDENTIFIED MALE:  I -- I think we --
23         THE COURT:  -- this as a big issue.
24         UNIDENTIFIED MALE:  -- can work -- I don't -- yeah.
25         We do have one issue.  Mr. Rockey's going to address

42

1    it, if we --

2              THE COURT:  Okay.

3              UNIDENTIFIED MALE:  -- if we may, Your Honor.

4              MR. ROCKEY:  Your Honor, the -- the one *in limine*

5    motion which is perhaps nearest and dearest to my heart is the

6    -- an affidavit of Dr. Spencer.  And Your Honor may recall you

7    dealt with that during the discovery phase of the case.

8              Essentially, what is involved -- what happened was

9    Dr. Spencer was deposed.  I think it was something like three

10   or four days before the close of discovery, Lilly produced an

11   affidavit that he had submitted in connection with the

12   prosecution.  I believe it was a British application.

13             UNIDENTIFIED MALE:  Brazil.  Brazil.

14             MR. ROCKEY:  Brazil?

15             UNIDENTIFIED MALE:  Brazil.  Brazil.

16             MS. MASUROVSKY:  Brazil.

17             MR. ROCKEY:  Okay, Brazil.  And the affidavit

18   basically suggested that this was a breakthrough invention, et

19   cetera, et cetera.  It was -- it was laudatory of the

20   invention.

21             So we said, well, you know, we don't understand why

22   it took you so long to produce it, but, in any event, we're

23   going to have to take his deposure(sic) -- take his deposition.

24             Well, he refused to be deposed.  Lilly refused to

25   take his deposition.  And now they propose to use the

43

1  affidavit.  And it's, you know, it's rank hearsay, of course.

2  But that is going to involve one of our -- our motion -- one of

3  our motions *in limine* will deal with that situation.

4       Because I think Your Honor ruled, as I recall, as a

5  result of a telephone conference, that we could take the deposi

6  -- or Lilly could take the deposition.  And then they said, no,

7  we're not going to, and turned around and said, but we're going

8  to use the affidavit anyway.

9       So we have a -- we have a real problem with that,

10  Your Honor.

11       THE COURT:  It sounds more like an evidentiary issue

12  to me, Mr. Rockey, which I think would be decided by Judge

13  Cavanaugh.  But I think that maybe you can deliver that one to

14  me as well and we'll --

15       MR. ROCKEY:  Okay.

16       THE COURT:  -- I'll take it up with Judge Cavanaugh

17  --

18       MR. ROCKEY:  That's fine, Your Honor; we're happy to

19  do that.

20       THE COURT:  It sounds -- it sounds like an

21  evidentiary issue, I think, more than a discovery issue.

22       MR. ROCKEY:  Well, it certainly --

23       THE COURT:  I could be wrong.

24       MR. ROCKEY:  -- is an evidentiary issue.

25       THE COURT:  So I'm -- you know, I'm not -- I don't

44

1   usually decide evidentiary issues.  I'm -- but I -- it does

2   have a discovery component, which I understand.  But I -- I

3   don't think that's -- I think that's one that will probably be

4   decided by Judge Cavanaugh.

5         MR. ROCKEY:  Thank you, Your Honor.

6         THE COURT:  Thank you.

7         So where were we?  We were on the issue of the

8   witnesses.  No, the -- the exhibits; I'm sorry.

9                    (Pause in proceeding)

10        THE COURT:  So the parties are going to confer

11  regarding any document which a party claims was not properly

12  produced in discovery.

13        And then, to the extent that that is -- remains an

14  objection, it will be briefed, and I'll decide the issue.

15                   (Pause in proceeding)

16        Now, we're a month before trial.  There's a lot of

17  time to alleviate any real prejudice.  And the fact that you're

18  busy and pressed is completely understandable and I'm

19  sympathetic to it, but, given the stakes and the -- the

20  expenses put out in counsel fees in this type of a case, I

21  wouldn't expect there would be too many exhibits that would be

22  excluded as complete surprises at this point.

23        So what I would look to is ways of alleviating any

24  possible prejudice.  It doesn't sound like these things were

25  surprises, but perhaps they are; I don't know.  I can't imagine

45

1   that something is going to first show up on an exhibit list as

2   prior art in a case of this type and with this much discovery

3   and it's never been mentioned before, but maybe I'll be

4   surprised.

5          So I don't know if you -- I want to be very clear.

6   The parties are to immediately confer about any documents on

7   either exhibit list that they claim were not produced in

8   discovery and try to find a way to resolve that issue.  And, if

9   you can't resolve it, bring it to my attention, the sooner the

10  better, and definitely no later than the 26th.

11         All right, the legal issues speaks for itself.  Let

12  me go to page 645 -- see here -- the miscellaneous --

13                     (Pause in proceeding)

14         THE COURT:  Okay, I'm just going to go through them.

15  On page 645, the request to present a brief tutorial on the

16  technology, et cetera, at the start of the trial.  That was

17  already mentioned.  And it's something that needs to be raised

18  with Judge Cavanaugh.

19         The issue about the order of witnesses and the -- the

20  problems with witnesses.  Likewise, those will be raised and

21  decided by the Trial Judge.

22         Number four, that the Court permit only one attorney

23  from each side to question each wi -- each witness.  Once

24  again, this is all within the province of Judge Cavanaugh.

25         The IND, that's what we just discussed, I think.

46

1    Lilly plans to withdraw commercial success.  That's

2   Strattera -- as objective evidence is not -- okay.

3    Dr. Paul.  So we discussed him.

4    And then Defendants -- let's see -- are just

5   basically responses.  Let's see what else.

6    UNIDENTIFIED MALE:  Just responses, Your Honor.

7    THE COURT:  Yeah.  So, basically, we've -- we've

8   covered all those issues; excellent.

9    (Pause in proceeding)

10    THE COURT:  So are there any other issues that we

11   haven't raised that you'd like to raise now?

12    MR. PARKER:  Your Honor, Tom Parker.

13    THE COURT:  Yeah.

14    MR. PARKER:  Just with respect to, on page 645, with

15   item number four, concerning Lilly's re -- request that the

16   Court permit only one attorney for each side to question each

17   witness.  Should -- should Plaintiff raise that with -- with

18   Judge Cavanaugh by -- by way of motion, or should that be

19   raised at the day of -- I'm just trying to get some timing in

20   terms of how that should be handled; a recommendation.

21    THE COURT:  You know, obviously, that's not a -- a

22   big legal issue --

23    MR. PARKER:  Right.

24    THE COURT:  -- it should be raised with Judge

25   Cavanaugh.

47

1          Given that we have this tight schedule, I would

2     include it as a -- an *in limine* motion.  It doesn't need a

3     brief or anything formal, but it -- it'll set before the Judge,

4     you know, several weeks before the trial -- the issue.  And

5     then he'll decide and he'll -- he'll let you know.

6          Any other issues?

7          UNIDENTIFIED MALE:  Very quickly --

8          THE COURT:  Mr --

9          UNIDENTIFIED MALE:  -- Your Honor.  We wondered if we

10    could get the Court's guidance on whether Judge Cavanaugh's

11    going to want openings and closings.  If so, if there's going

12    to be timing on that.  And is that something Your Honor thinks

13    we should raise with Judge Cavanaugh now via a letter or

14    motion, or wait, or request a -- a con -- a pre-trial

15    conference with Judge Cavanaugh?

16         We just want to seek some type of guidance, so we

17    know how the -- the -- the phases of the trial are going to

18    proceed.

19         THE COURT:  I'll raise the issue with Judge Cavanaugh

20    immediately, and perhaps we can have a telephone conference.

21    And I -- we'll do it -- if we have an answer for you or not.

22    Otherwise, then you should raise it with Judge Cavanaugh

23    directly.

24         UNIDENTIFIED MALE:  If -- if Your Honor -- could Your

25    Honor also raise -- or we would request you could also raise

48

1    the -- the days we'll be trying the case, will it be full trial

2    days, all five days a week, or if it will be --

3            THE COURT:  Why don't you put this in a letter.

4            UNIDENTIFIED MALE:  We could that, Judge.

5            THE COURT:  I think you should put it in a letter.

6    The -- the -- the different questions you have about that kind

7    of thing.

8            UNIDENTIFIED MALE:  Addressed to Your Honor?

9            THE COURT:  You could address it to me, or you could

10   address it directly to Judge Cavanaugh.  But, if you address it

11   to me, I'll shepherd it there.

12           UNIDENTIFIED MALE:  Thank you, Judge.

13           MS. MASUROVSKY:  Thank you, Your Honor.  For -- for

14   Lilly, we would very much appreciate the opportunity to present

15   an opening statement of the issues and -- and a closing

16   argument.

17           THE COURT:  Okay, send me -- and, if there -- yeah, I

18   -- I -- I think you should put that in writing, your positions.

19   And we'll see what the Judge wants to do.

20           How long do you expect the trial to be?

21                   (Pause in proceeding)

22           UNIDENTIFIED MALE:  I'm going to venture an estimate

23   of seven to eight days.

24           THE COURT:  Seven to eight days.

25           UNIDENTIFIED MALE:  I think that we should be able to

49

1    make a substantial progress in putting in our case during the

2    week of the 18th.  Anybody disagree with that?

3           That's -- that's -- at least that's the plan, Your

4    Honor.

5           THE COURT:  Understood.

6           Okay, have you assigned this final pre-trial.  Is it

7    slashed?  How do you -- how do you have it?

8           MS. MASUROVSKY:  Yes -- yes, Your Honor.  It was

9    assigned electronically and filed electronically.

10          THE COURT:  So I'm going to sign it and enter it on

11   the docket.

12          Just to review what we've discussed here today, I

13   guess, first of all, I'd like to get a list from both sides as

14   to the specific *in limine* motions you intend to bring.  And I

15   know they're due on the 26th, so I'd like to get that list this

16   week, before then.

17          Do we have the Ron(sic) Paul -- not Ron Paul --

18                         (Laughter)

19          UNIDENTIFIED FEMALE:  Nor -- nor Les Paul, Your

20   Honor.

21          UNIDENTIFIED MALE:  Les?

22          UNIDENTIFIED FEMALE:  Dr. Steve Paul.

23          THE COURT:  Dr. Steve -- Dr. Steve Paul issue.  And I

24   have -- from what I've heard, I'd -- I'd like the Plaintiff to

25   raise the issue and provide the other side with a proffer.

1       MS. MASUROVSKY:  Yes, Your Honor, we will do that.

2       THE COURT:  But now we need to figure out dates.  I'd

3  like to have this thing briefed as quickly as possible.

4       How quickly can you provide that, Plaintiffs?

5       MS. MASUROVSKY:  A -- a week, Your Honor?

6       THE COURT:  Okay.

7                    (Pause in proceeding)

8       THE COURT:  Well, then I'm going to want to get a --

9  a response from the Defendants very quickly.

10      UNIDENTIFIED MALE:  I was going to ask for a week,

11 Your Honor?  I mean, it's the same schedule as the --

12      THE COURT:  Okay, it's fine --

13      UNIDENTIFIED MALE:  -- other *in limine*.

14      THE COURT:  -- given the fact that, if we do order

15 this deposition, it's --

16      UNIDENTIFIED MALE:  (Whispers) Do you want to do it

17 quicker?

18      THE COURT:  -- the pressure will be on you folks.

19      UNIDENTIFIED MALE:  All right, so, if it's a week, if

20 -- if you're going to do it on a Monday, we'll have it in by

21 that Friday.

22      THE COURT:  Okay.

23      And then the final issue is --

24                   (Pause in proceeding)

25      THE COURT:  -- is the exhibits that parties claim

51

1    were not produced in discovery, but are going to be proffered

2    at trial.  And the parties are directed to immediately confer

3    on those and see what you can do to limit the number or

4    alleviate any possible prejudice and then raise the issue in

5    the normal course as an *in limine* motion.

6              Anything else, folks?

7              MS. MASUROVSKY:  No, thank you, Your Honor.

8              THE COURT:  Okay.

9              UNIDENTIFIED MALE:  I don't think so, Your Honor.

10             UNIDENTIFIED MALE:  No, Your Honor.  Thank you very

11   much.

12             THE COURT:  Thank you all very much.

13             UNIDENTIFIED MALE:  Thank you, Your Honor.

14             THE COURT:  Good luck.

15             UNIDENTIFIED MALE:  Thank --

16             MS. MASUROVSKY:  Thank you, Your Honor.

17             UNIDENTIFIED MALE:  Thank --

18             COURT CLERK:  All rise.

19

20

21

22

23

24

25   (Whereupon, at 11:20 a.m., the conference was concluded.)

52

1                           CERTIFICATE

2

3       I certify that the foregoing is a correct transcript from

4  the electronic sound recording of the proceedings in the

5  above-entitled matter.

6

7  **S/** *Sonia Undseth*              *April 29, 2010*

8  Signature of Assigned Transcriber        Date

9

10 Sonia Undseth, Assigned Transcriber
   King Transcription Services
11 65 Willowbrook Boulevard
   Wayne, NJ 07470
12 (973) 237-6080

13

14

15

16

17

18

19

20

21

22

23

24

25