UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ELI LILLY AND COMPANY, | : | |
| Plaintiff, | : | CIVIL ACTION NO. 07-3770 (DMC) |
| v. | : | **CLERK'S OPINION GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO TAX COSTS** |
| ACTAVIS ELIZABETH LLC, GLENMARK PHARMACEUTICALS INC. USA, SUN PHARMACEUTICAL INDUSTRIES LIMITED, SANDOZ INC., MYLAN PHARMACEUTICALS INC., APOTEX INC., AUROBINDO PHARMA LTD., TEVA PHARMACEUTICALS USA, INC., SYNTHON LABORATORIES, INC., ZYDUS PHARMACEUTICALS, USA, INC., | : : : : : | |
| Defendants. | : | |

_____

This matter comes before the Clerk on the motion of Plaintiff Eli Lilly and Company ("Plaintiff," "Lilly," "the movant") for the taxation of costs pursuant to Federal Rule of Civil Procedure 54(d) and Local Civil Rule 54.1. Defendants Sun Pharmaceutical Industries Ltd. ("Sun"), Sandoz Inc. ("Sandoz"), Mylan Pharmaceuticals Inc. ("Mylan"), Apotex Inc.("Apotex") and Aurobindo Pharma Ltd. ("Aurobindo") (hereinafter, collectively, "Defendants") oppose this motion.

This is a patent infringement case involving a drug marketed by Lilly as Strattera. On August 19, 1997, Lilly was assigned U.S. Patent No. 5,658,590 ("the '590 patent"), a method-of-use patent covering methods of treating attention deficit/hyperactivity disorder ("ADHD") with tomoxetine (also referred to as atomoxetine). In its First Amended Complaint, filed on September 5, 2007 [Dkt. Entry 3], Lilly alleged that each of the above-captioned defendants violated Lilly's '590 patent by filing an Abbreviated New Drug Application

for approval by the United States Food and Drug Administration of its generic version of Strattera.  In their answers and counterclaims, the various defendants sought declarations that Lilly's patent was invalid, unenforceable and/or not infringed.

On December 12, 2007, Lilly entered into a Consent Judgment and Order resolving its claims against Zydus Pharmaceuticals, USA, Inc. and providing that each party would bear its own costs [Dkt. Entry 105].  Lilly entered into a similar Consent Judgment and Order with Glenmark Pharmaceuticals Inc. USA on July 1, 2008 [Dkt. Entry 174].  On August 20, 2008, by Stipulation and Order of Dismissal, Lilly's claims against Synthon Laboratories, Inc. ("Synthon") were dismissed without prejudice as were Synthon's defenses and counterclaims [Dkt. Entry 215].  The Order again provided that each party was to bear its own costs.

On October 22, 2008, Sun filed a motion for partial summary judgment as to no direct infringement [Dkt. Entry 254] and the other Defendants herein, i.e., Sandoz, Mylan, Apotex, and Aurobindo, joined in, as did defendants Actavis Elizabeth LLC ("Actavis") and Teva Pharmaceuticals USA, Inc. ("Teva").  That motion was granted by this Court's Order of May 21, 2009 [Dkt. Entry 332].

On May 13, 2009, Sandoz, Mylan, Apotex, Aurobindo, and Sun, i.e., Defendants here, as well as defendants Actavis and Teva, filed a joint motion for summary judgment of invalidity [Dkt. Entry 294].[1]

On the same date, Lilly filed motions for summary judgment of no inequitable conduct [Dkt. Entry 292], of no anticipation [Dkt. Entry 298], and of infringement [Dkt. Entry 299].

---

[1]     Sun actually joined the other defendants' joint summary judgment motion by notice of motion filed on July 27, 2009 [Dkt. Entry 444].

During the period of May through July 2009, Aurobindo, Sun, Mylan, Teva, Apotex, Sandoz and Actavis filed separate motions for summary judgment of no infringement. [Dkt. Entries 283, 304, 308, 380, 394, 412, 436, respectively].

By Order of December 29, 2009 [Dkt. Entry 491], the Court ruled on the various motions for summary judgment as follows:  the defendants' motion for summary judgment of invalidity based upon lack of enablement/utility and obviousness was denied as was their motion for summary judgment of no infringement.  Lilly's motion for summary judgment of no inequitable conduct before the Patent and Trademark Office was granted in part and denied in part. Lilly's motion for summary judgment of no anticipation was granted as was its motion for summary judgment as to induced infringement.

On January 19, 2010, the Court also granted the defendants' motion for summary judgment of no contributory infringement.  [Dkt. Entry 506].

On February 8, 2010, the Court denied Apotex's motion to reconsider the Court's Order granting summary judgment of induced infringement.  [Dkt. Entry 537].  Also denied, on February 23, 2010, was Lilly's motion to reconsider findings in the Court's Amended Opinion, addressing the defendants' motion for summary judgment of non-enablement.  [Dkt. Entry 540].

On April 8, 2010, Lilly and Teva entered into a Joint Stipulation staying all of Lilly's claims against Teva and all of Teva's defenses until a final court decision from which no appeal could be taken.  [Dkt. Entry 557].  The parties waived any and all claims against the other for costs.

On April 19, 2010, Lilly entered a virtually identical Joint Stipulation, staying the action with Actavis, and waiving the parties' claims for costs against the other.  [Dkt. Entry 567].

After a six-day bench trial, held on May 18, 19, 24-27, 2010, the Court concluded that these Defendants, Actavis and Teva failed to prove that the '590 patent was invalid as obvious or not enabled to the full scope of its claims or that the patent should be held unenforceable as a result of inequitable conduct.  However, the Court determined that the '590 patent was  invalid for lack of enablement/utility under 35 U.S.C. § 112.  [Dkt. Entry 657].  Final Judgment was entered in favor of Defendants on August 24, 2010.  [Dkt. Entry 686].

Lilly filed its notice of appeal to the United States Court of Appeals for the Federal Circuit on August 25, 2010 [Dkt. Entry 687], and Defendants herein cross-appealed.  [Dkt. Entries 689-94].  On August 31, 2010, the Federal Circuit granted Plaintiff's request for an injunction pending the appeal.  On October 25, 2011, the Federal Circuit issued its mandate, reversing in part, affirming in part and remanding to this Court.  [Dkt. Entry 743].  The Circuit Court reversed this Court's judgment that the '590 patent claims were invalid and its finding of no contributory infringement by the defendants.  It affirmed this Court's finding of validity on other grounds and induced infringement by the defendants.  Id.

On December 6, 2011, Final Judgment was entered by this Court in favor of Lilly and against these Defendants, Actavis and Teva, and it provides for the defendants' payment of costs to Lilly.  [Dkt. Entry 748].

Plaintiff filed the instant motion on January 5, 2012 [Dkt. Entry 749], seeking the taxation of costs as a "prevailing party" within the meaning of Fed. R. Civ. P. 54(d).[2]

---

[2]      Fed. R. Civ. P. 54(d) (1) provides, in relevant part:  "***Costs Other Than Attorney's Fees.***  Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party."

Specifically, Lilly requests the taxation of the fees of:  the Clerk ($1,100.00)[3]; hearing and

deposition transcripts ($57,614.64)[4]; witnesses ($1,150.00); and exemplification and copies

($275,103.40), or a total of $334,968.04.  Defendants object to taxation of all categories

of costs.

### I.    Standards for Awarding Costs

Under Federal Rule of Civil Procedure 54(d) (1), a prevailing party is entitled to costs

unless the Court otherwise directs.  A prevailing party is "one in whose favor a judgment is

rendered, regardless of whether the party has recovered its entire claim or a portion thereof."

Garonzik v. Whitman Diner, 910 F. Supp. 167, 168 (D.N.J. 1995) (citing Fahey v. Carty,

102 F.R.D. 751 (D.N.J. 1983)).  That term has been even more broadly defined as a party who

"succeeds on 'any significant issue in litigation which achieved some of the benefit sought in

bringing suit.'"  Reichhold, Inc. v. U.S. Metals Ref. Co., Civ. A. No. 03-453, 2009 WL 3761828,

at *1 (D.N.J. Nov. 6, 2009) (quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)).

Indeed, there is such a strong presumption that costs should be awarded to the prevailing

party that, " '[o]nly if the losing party can introduce evidence, and the district court can articulate

reasons within the bounds of its equitable power, should costs be reduced or denied to the

prevailing party.' "  Reger v. Nemours Found., Inc., 599 F.3d 285, 288 (3d Cir. 2010) (quoting

In re Paoli RR Yard PCB Litig., 221 F.3d 449, 468 (3d Cir. 2000)).  The rationale behind this

---

[3]     Plaintiff originally requested $1,400 but later deducted the $300 cost of two *pro hac vice* applications.  Pl.'s Reply (incorrectly paginated) at 2, n.1.

[4]     Lilly initially sought transcript fees totaling $58,199.64, but it subsequently deducted the $585 cost of DVD sync in the invoice for the King deposition.  Pl.'s Reply at 4, n. 2.  The $970 cost of video and DVD sync in the invoice for the Wargo deposition was never requested by Plaintiff, contrary to the indication in Plaintiff's Reply.  Id.

presumption is that the denial of costs is tantamount to a penalty.  Id. at 288-289 (citing ADM Corp. v. Speedmaster Packaging Corp., 525 F.2d 662, 665 (3d Cir 1975)).

Despite this strong presumption, courts do not have unfettered discretion to grant costs under Rule 54(d) but rather, are bound by statute. The United States Supreme Court has ruled that absent express statutory authorization, courts may reimburse only those costs which are enumerated in 28 U.S.C. § 1920.  Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 441 (1987).  Title 28 U.S.C. § 1920 provides for the taxation of the following costs:

> (1) Fees of the clerk and marshal;
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title;
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

The Supreme Court recently reinforced its Crawford Fitting holding in Taniguchi v. Kan Pacific Saipan, Ltd., 132 S.Ct. 1997 (2012).  In Taniguchi, the Court limited the provision in §1920 (6) for the "compensation of interpreters" to the cost of oral translation, and denied the cost of document translation, stating that its decision was "in keeping with the narrow scope of taxable costs." Id. at 2006.

In addition to Rule 54(d) and 28 U.S.C. § 1920, the Clerk's decision is guided by Local Civil Rule 54.1, which "establishes the general procedures to be followed in those cases where a party is entitled to recover costs" under § 1920.  Lite, N.J. Federal Practice Rules, Comment 2 to Rule 54.1 (Gann 2013 ed.) at 234.

6

Therefore, while a prevailing party is entitled to costs under Rule 54(d), "those costs often fall well short of the party's actual litigation expenses." In re Paoli, 221 F.3d at 458. Furthermore, despite the presumption of granting costs to a prevailing party, that party must provide sufficient information to carry its burden of showing that the costs sought fall within the limits of § 1920. Romero v. CSX Transp., Inc. 270 F.R.D. 199, 201-202 (D.N.J. 2010).

Plaintiff is the prevailing party as Final Judgment was entered in its favor post-appeal and Defendants do not dispute this. Furthermore, Lilly has followed the procedural requirements set forth in L. Civ. R. 54.1 and 28 U.S.C. § 1924 by timely filing and serving a verified Bill of Costs with copies of invoices appended [Dkt. Entry 749]. As such, the Clerk will now examine the specific costs of which Plaintiff seeks taxation, as outlined in the Declaration of L. Scott Burwell, Esq. ("Burwell Decl.") [Dkt. Entry 749-2].

## II.    Fees of the Clerk and Marshal, § 1920 (1)

### A.    Filing Fee

Plaintiff seeks reimbursement, pursuant to § 1920 (1), of the $350 fee for filing its Complaint. At the time of filing its original Complaint on August 9, 2007, the fee required under 28 U.S.C. § 1914(a) to file a civil action was $350 and the docket shows that this fee was paid by Plaintiff. Defendants do not contest taxation of this cost, clearly allowed under § 1920 (1), and therefore, the Clerk taxes this **$350** cost.

### B. *Pro Hac Vice* Fees

The movant also seek reimbursement, under §1920 (1), of the $750 cost of the *pro hac vice* admission of five out-of-state counsel. A $150 fee was paid by Plaintiff to the Clerk for

the admission of each of these attorneys on January 22, 2010, as required under L. Civ. R. 101.1(c) (3).

Section 1920 (1) allows the taxation of the "[f]ees of the clerk" but does not explicitly include *pro hac vice* fees as costs. The Third Circuit has not addressed whether these fees are taxable costs and federal courts have lined up on both sides of the issue. The Eighth Circuit has held that *pro hac vice* fees are recoverable under § 1920 (1), <u>Craftsmen Limousine, Inc. v. Ford Motor Co.</u>, 579 F.3d 894, 898 (8th Cir. 2009), and the Eleventh Circuit has held otherwise, <u>Beck v. Prupis</u>, 162 F.3d 1090, 1100 (11th Cir. 1998), <u>aff'd</u>, <u>on</u> <u>other</u> <u>grounds</u>, 529 U.S. 494 (2000) (finding district court did not abuse its discretion in disallowing the taxation of *pro hac vice* fees).

Defendants assert that *pro hac vice* fees are not taxable under the governing statutes and cite two decisions by this Court. However, in the case of <u>Dewey v. Volkswagen of Am.</u>, 728 F.Supp.2d 546 (D.N.J. 2010), <u>rev'd</u> <u>on</u> <u>other</u> <u>grounds</u>, 681 F.3d 170 (3d Cir. 2012), the Court there stated that Rule 54(d) was not controlling in that case. The case of <u>Pretlow v. Cumberland Cnty. Bd. Of Soc. Servs.</u>, Civ. A. No. 04-2885, 2005 WL 3500028 (D.N.J. Dec. 20, 2005), also cited by Defendants, applied 42 U.S.C. § 1988, not 28 U.S.C. § 1920. Similarly, the case of <u>Interfaith Community Org. v. Honeywell, Int'l</u>, 426 F.3d 694 (3d Cir. 2005), cited by the <u>Pretlow</u> court, applied the cost provision for citizen suits found in 42 U.S.C. § 6972(e), not 28 U.S.C. § 1920. The Clerk is not guided by such case law which relies on fee-shifting provisions other than Fed. R. Civ. P. 54(d) and 28 U.S.C. § 1920. By its plain language, Rule 54(d) provides for such an exception: "[u]nless a federal statute . . . provides otherwise."

Plaintiff relies upon the case of <u>Church & Dwight Co., Inc. v. Abbott Labs.</u>, Civ. A. No. 05-2142, 2009 U.S. Dist. LEXIS 58067, at *21 (D.N.J. July 8, 2009), in which this Court

8

summarily taxed *pro hac vice* fees without discussion of case law or its rationale. Nevertheless, particularly in the wake of the Taniguchi case, the Clerk is persuaded by the reasoning of those courts within this Circuit which have relied upon § 1920 (1) and declined to tax such fees.  In Sheffer v. Experian Info. Solutions, Inc., 290 F.Supp.2d 538, 552 (E.D. Pa. 2003) (quoting Romero v. United States, 865 F. Supp. 585, 594 (E.D. Mo. 1994)), the court explained that *pro hac vice* fees are "an 'expense of counsel for the privilege of practicing law in this Court' and, as such, are 'not normally charged to a fee-paying client . . . and are not recoverable' under § 1920." See also Montgomery County v. Microvote Corp., Civ. A. No. 97-6331, 2004 WL 1087196 , at *3 (E.D. Pa. May 13, 2004).  Other courts have similarly held. See, e.g., Moss v. Spartanburg County School Dist., C.A. No. 7:09-1586-HMH, 2011 WL 1870280, at *1 (D.S.C. May 17, 2011); Lofton v. McNeil Consumer & Specialty Pharm., Civ. A. No. 3:05-CV-1531-L, 2011 WL 206165, at *1 (N.D. Tex. Jan 4, 2011); Knauff v. Dorel Juvenile Group, Inc., Civ. A. No. SA-08-CV-336-XR, 2010 WL 2545424, at *2 (W.D. Tex. June 21, 2010).

The Clerk agrees that Defendants should not be required to pay these fees simply because Plaintiff chose to be represented by counsel who are not admitted to practice in this district. Therefore, the Clerk denies the taxation of Plaintiff's *pro hac vice* fees.

**II.      Fees for Transcripts, § 1920 (2)**

**A.   Trial Transcripts**

Lilly seeks reimbursement, pursuant to § 1920 (2), of the $2,862.00 cost of the written transcript of the six-day trial, as well as the $967.20 charge for the Realtime transcript of the last four days of the trial, or a total of $3,839.20.  Defendants object to taxation of the Realtime transcript which they view as duplicative and a convenience of counsel, but do not object to the taxation of the written transcript.

9

Fees for recorded transcripts are taxable under § 1920 (2) if the transcripts were necessarily obtained for use in the case. Local Civil Rule 54.1(g) (6) specifies:

> The cost of a reporter's transcript is allowable only (A) when specifically requested by the Judge, master, or examiner, or (B) when it is of a statement by the Judge  to be reduced to a formal order, or (C) if required for the record on appeal. . . Copies of transcripts for an attorney's own use are not taxable in the absence of a prior order of the Court. All other transcripts of hearings, pretrials and trials will be considered by the Clerk to be for the convenience of the attorney and not taxable as costs.

The comments to L. Civ. R. 54.1 further provide:

> In submitting a Bill of Costs to the Clerk which includes a request to tax costs of transcripts, it is essential to specify how the transcript was used. Absent evidence of a request from the Court for the transcript or proof by way of supporting affidavit that the transcript was used in a way that gives rise to an entitlement to a costs award, it is the practice of the Clerk to deny the request.

Lite, N.J. Federal Practice Rules, Comment 4d. to Rule 54.1 (Gann 2013 ed.) at 245.

The cost of the written transcript is certainly taxable because it was used in several ways and therefore, the Clerk grants this **$2,862.00** cost. In the Final Pretrial Order, the Court required that counsel submit trial briefs and post-trial proposed findings of fact and conclusions of law. [Dkt. Entry 566]. Trial transcripts are taxable when used to prepare findings of fact and conclusions of law, particularly in a complex case such as this. Merck Sharp & Dohme Pharms., SRL v. Teva Pharms., USA, Inc., Civ. A. No. 07-1596, 2010 WL 1381413, at *3 (D.N.J. Mar. 30, 2010). Trial transcripts are necessary when the proposed findings could not have been presented adequately without them. Manley v.Canterbury Corp., 17 F.R.D. 234, 235 (D. Del. 1955); Cottier v. City of Martin, No. CIV 02-5021, 2012 WL 397487, at * 3 (D.S.D. Feb. 7, 2012); Neuros Co., Ltd. v. KTurbo, Inc., No. 08-cv-5939, 2011 WL 3841683, at *3 (N.D. Ill. Aug. 25, 2011).

Additionally, the daily trial transcripts were used to prepare witnesses for examination and for the admission of exhibits into evidence.  Pl.'s Br. at 2, n.2.  Furthermore, they were necessary to brief Plaintiff's appeal to the Federal Circuit.  Id.

Regarding the cost of the Realtime transcript of four days of the trial, Defendants maintain that this transcript was not essential to the smooth functioning of the trial, not necessary for the record on appeal, and was merely for the convenience of counsel.  Defs.' Br. at 3.  The Clerk agrees and notes that, as stated by Defendants, attorneys have conducted trials without them for decades.  Absent a showing of necessity, this type of litigation support cost is deemed to be for the convenience of counsel and therefore not taxable under § 1920 (2).  See e.g., United States ex rel. Davis v. U.S. Training Center, Inc., 829 F. Supp. 2d 329, 339 (E.D. Va. 2011) (denying costs of transcript drafts and realtime transcript services as convenience of counsel and not necessary to successful trial preparation); Evert Fresh Corp. v. Pactiv Corp., Civ. A. No. 4:09-cv-1936, 2011 WL 2672353, at *2-3 (S.D. Tex. July 7, 2011) (denying cost of electronic version of transcripts even though counsel argued they were necessary to prepare for the next day of trial and they were the only available transcript).  Unlike the Evert Fresh Corp. case, the daily trial transcript was available to counsel here and the Realtime version was merely a duplicative form for the convenience of counsel.  This $967.20 cost is denied.

### B.  Deposition Transcripts

Lilly also requests, pursuant to § 1920 (2), the cost of 21 depositions, totaling $53,775.44.  Defendants object to granting the costs of 16 of the depositions and maintain that in general, the transcript costs are over-inclusive as to services. Defs.' Br. at 4-7.

Local Civil Rule 54.1(g) (7) limits the taxation of the costs of deposition transcripts to those "used at the trial":

In taxing costs, the Clerk shall allow all or part of the fees and charges incurred in the taking and transcribing of depositions <u>used at the trial</u> under Fed. R. Civ. P. 32. Fees and charges for the taking and transcribing of any other deposition shall not be taxed as costs unless the Court otherwise orders (emphasis added).

However, 28 U.S.C. § 1920 more broadly allows for the taxation of "[f]ees for printed or electronically recorded transcripts <u>necessarily obtained for use in the case</u>." 28 U.S.C. § 1920 (2) (emphasis added). In the case of <u>In re Baby Food Antitrust Litigation</u>, the Third Circuit held that a local court rule must yield to a federal rule where the two conflict, and interpreted "necessarily obtained" as allowing for the taxation of the cost of depositions used in deciding summary judgment motions. 166 F.3d 112, 138 (3d Cir. 1999).

Even before the ruling in <u>In re Baby Food</u>, this Court held that it has broad discretion to tax deposition costs under 28 U.S.C. § 1920. <u>Hurley v. Atlantic City Police Dep't</u>, Civ. A. Nos. 93-260, 94-1122, 1996 WL 549298, at *5 (D.N.J. Sept. 17, 1996). In <u>Hurley</u>, this Court stated that the failure of the prevailing party to introduce depositions into evidence at trial did not preclude a finding that they were "used" at trial. It went on to explain, "[a]n attorney needs deposition transcripts to prepare for both direct and cross-examination even if the transcripts are not directly introduced into evidence during the trial." <u>Id</u>.

This Court has stated even more expansively that "[f]or the costs to be taxable, the depositions need not have been used at trial, and must only 'appear reasonably necessary to the parties in light of a particular situation existing at the times they were taken.'" <u>Thabault v. Chait</u>, Civ. A. No. 85-2441, 2009 WL 69332, at *7 (D.N.J. Jan. 7, 2009) (quoting <u>Datascope Corp. v. SMEC, Inc.</u>, No. 81-3948, 1988 WL 98523, at *3 (D.N.J. Sept. 15, 1988). <u>See also</u>, <u>Smith v. Crown Equip. Corp.</u>, No. Civ. A. 97-541, 2000 WL 62314, at *3 (E.D. Pa. Jan. 13, 2000).

12

*Defendants' Expert Witnesses*

Defendants do not object to taxing the costs of the depositions of Craig Berridge, Ph.D., James Johnson, Ph.D., John Goolkasian, Floyd Sallee, M.D., Ph.D., and Jud Staller, M.D., all Defendants' expert witnesses, except to argue that the requested amounts should be decreased due to over-inclusiveness.  Plaintiff used all of these transcripts either to cross-examine witnesses or to brief the various summary judgment motions, and thus, the Clerk finds them necessary for use in the case.

*Teva and Actavis Witnesses*

Defendants do contest the granting of the costs of the depositions of five Teva and Actavis witnesses, i.e., Philip Erickson, Janak Jadeja, Elizabeth Stewart, Jennifer King and Terrence Fullem.  They contend that "Teva and Actavis settled with Lilly early in the case, long before trial, with stipulations to stay their actions that provided for each party to bear their own costs," Defs.' Br. at 4, and object to being saddled with this cost.

Lilly counters that "the deposition transcripts of the Teva and Actavis witnesses are properly taxable against the other Defendants, particularly in view of Defendants' coordination in this action, including by submitting joint expert reports, prior to the stipulations entered into by Teva and Actavis."  Pl.'s Reply at 3.

The Clerk observes that, contrary to Defendants' assertion, Lilly's case against Teva and Actavis was stayed, not settled, and these parties were subject to the Court's Final Judgment. [Dkt. Entries 557, 567, 686].  Furthermore, the stipulations staying these claims were entered into just one month prior to trial, during April, 2010, not early in the case.

Lilly's argument that all of the defendants raised common defenses/counterclaims and coordinated their discovery efforts by, for example, submitting joint expert reports, is enticing.

13

The defendants did, indeed, collaborate further by filing a joint motion for summary judgment of invalidity.  [Dkt. Entry 294].  Furthermore, the commonality argument is supported by Lilly's intent, even after its action was stayed as to Teva and Actavis, to use the Teva and Actavis depositions in question against these remaining Defendants by designating portions of the five transcripts for admission at trial.  See Final Pretrial Order (under seal), [Dkt. Entry 566] at 374-8, 395, 398-99, 417.

The Third Circuit has held that the district court, exercising its equitable power, may divide costs among the losing and winning parties in cases involving multiple defendants and plaintiffs.  In re Paoli, 221 F.3d at 469.  In apportioning costs, the court may impose them jointly and severally or individually.  Id.  In the In re Paoli case, the Third Circuit found that, with the exception of two plaintiffs, discussed below, the district court did not abuse its discretion in not apportioning costs among the losing nineteen plaintiffs, given the similarity of most of the plaintiffs' claims and related costs incurred.  In so ruling, it stated that "[t]he Plaintiffs have adduced no evidence suggesting that these costs could be connected – to a greater or lesser degree – with any of the particular Plaintiffs."  Id. at 470.  However, it held that the lower court did abuse its discretion in imposing joint and several liability of all of the costs against two plaintiffs whose cases were different in kind from the rest of the plaintiffs' and whose claims accounted for only a fraction of the defendants' costs, particularly where the plaintiffs were able to separate out the money spent by defendants in defending against those two plaintiffs' claims.  The district court's joint and several costs award penalized those two plaintiffs and was vacated.  Id. at 470-471.

However, the case at hand is more complicated than In re Paoli because Lilly entered into stipulations with Teva and Actavis that waived both parties' right to recover costs against the

14

other.   In a case directly on point involving Teva, the Court of Appeals for the Federal Circuit

denied costs to the prevailing plaintiff which had waived costs in settlement.  Ortho-McNeil

Pharm., Inc. v. Mylan Labs., 569 F.3d 1353 (Fed. Cir. 2009).  There, Daiichi sued two

defendants, Mylan and Teva, in two cases that were related, but held in two different courts.

Discovery was conducted jointly and plaintiff succeeded against Mylan in the one case, but

settled with Teva in the other, and agreed to waive costs.  In awarding costs to Daiichi, the

district court rejected Mylan's argument that the costs should be allocated between the two cases,

stating, "'no deposition at issue . . . was undertaken by Teva solely for use in that case' without

also being necessary for Mylan's case."  Id. at 1356.

The Federal Circuit, finding no precedential Fourth Circuit law, there applicable, relied

upon the general principle of law enunciated in various circuits that the prevailing party may

recover only one satisfaction of costs, whether costs are apportioned or awarded jointly and

severally.  Id. at 1357.  The Circuit Court vacated the district court's award to Daiichi of the

costs of jointly taken depositions, reasoning:

> Here it is apparent that Daiichi has in effect already recovered some amount of costs
> through its settlement agreement with Teva.  Although Teva did not actually pay
> costs to Daiichi in cash, the taxable costs in the New Jersey action (including deposition
> costs) were unquestionably taken into account by the parties' settlement, in which
> Daiichi agreed not to seek actual payment of costs as consideration for Teva foregoing
> its appeal.  Having recovered the value of those costs in the form of the foregone appeal,
> Daiichi cannot now recover more than its total entitlement by obtaining those same
> costs again from Mylan.

Id. at 1358.

See also Underwood v. Bd. of Cnty. Comm'rs of the Cnty. of Jefferson, No. CIV-07-668-

D, 2011 WL 806715 (W.D. Okla. Mar. 2, 2011) (taxing only one-half of the costs of depositions

because they involved claims of co-plaintiff who waived costs in settling with moving defendant,

stating "those claims overlapped and involved some of the same facts and legal issues; however, awarding Defendant all costs effectively allows it to recover from [the losing, non-settling plaintiff] a portion of the costs attributable to [the settling plaintiff's] claims, despite Defendant's agreement to bear its own costs associated with those claims.")

Additionally, in the case of <u>In re Air Crash Disaster</u>, 687 F.2d 626 (2d Cir. 1982), the Second Circuit held that it was beyond the district court's discretion to alter or refuse to enforce a settlement agreement and found  that the court below erred in not reducing the costs award to reflect the agreement of certain plaintiffs to settle without costs.

Based upon the foregoing case law, the Clerk must deny Lilly the costs of the Erickson, Jadeja, Stewart, King and Fullem depositions.  Lilly may recoup only one satisfaction of its costs and it obtained payment of these costs in consideration for Actavis' and Teva's agreement to forego appeals of this matter.  Furthermore, the Clerk is bound to enforce the terms of the stipulations which Lilly entered into with Actavis and Teva.  For all of these reasons, this $11,102.09 cost is denied.

### *Hinshaw and Shukla Depositions*

Defendants object to taxing the costs of the Hinshaw and Shukla depositions on the grounds that these deponents were neither listed on witness lists nor called at trial.  They further contend that the transcripts were not used at trial or at pre-trial motion hearings.  Defs.' Br. at 4.

Plaintiff replies that issues such as infringement and validity were likely to be resolved on the basis of these two deponents' testimony and therefore, their depositions appeared reasonably necessary at the time they were taken.  Pl.'s Reply at 3.  The Clerk agrees because Drs. Hinshaw and Shukla were Defendants' expert witnesses.  The reason that Dr. Shukla was not listed as a

witness was because she passed away before trial and Defendants replaced her with Dr. James Johnson, who adopted Dr. Shukla's expert report. [Dkt. Entry 523]; Final Pretrial Order, [Dkt.Entry 566], at 359, n.12.  Regarding the Hinshaw deposition, this transcript was cited by Lilly in its summary judgment briefing.  See Eli Lilly and Company's Response and Counterstatement to Defendants' Local Rule 56.1 Statement in Support of Their Motion for Summary Judgment of Invalidity of U.S.Patent No. 5,658,590, [Dkt. Entry 569-8], at 16, 23. Therefore, the Clerk determines that these transcripts were necessarily obtained for use in the case and are taxable.

### _Nine Remaining Depositions_

Defendants dispute taxation of the costs of the Spencer, Hogan, Rao Vanam, Gettenberg, Reddy, Shanley, Wargo, Muthal and Biederman depositions.  They argue that Lilly's stated use of "portions designated for inclusion in the trial record" is insufficient and that Lilly must demonstrate that the transcripts were used at trial or cited in pretrial briefing.  Defs.' Br. at 5. As discussed above, Lilly need only show that the depositions appeared reasonably necessary at the time they were taken.  While the role of all of these deponents is not obvious to the Clerk, Drs. Spencer and Biederman were the medical doctors who actually conducted the clinical trials at Massachusetts General Hospital, and their testimony was unquestionably relevant to the case. In any event, the Final Pretrial Order lists all of this testimony to be introduced into evidence at trial by Plaintiff.  [Dkt. Entry 566] at 379-82, 388-90, 400-410, 414-16, 427-31, 437. In accordance with the decision in Merck Sharp & Dohme Pharms., SRL, 2010 WL 1381413, at *3-4, cited by Lilly, the Clerk finds that these transcripts were necessarily obtained for use in the case and thus, taxable.

17

*Over-inclusiveness of Deposition Costs*

Defendants maintain that in general, the deposition costs sought by Lilly are over-inclusive as to services and must be reduced. Defs.' Br. at 5-7. Lilly supports this motion with invoices that include fees for: expedited or second day delivery, AM pages, Realtime, rough ASCII, condensed transcripts, media packages, word indices, exhibits, and delivery/shipping & handling.

Recoverable costs under § 1920 (2) include the cost of reporters in addition to the cost of the preparation of transcripts, L. Civ. R. 54.1(g) (7), and therefore, the Clerk taxes all fees for original transcripts and reporter appearance. However, for the most part, the remaining fees for expedited services, litigation support and delivery are not taxable because they are not among those listed in § 1920 and are considered to be for the convenience of counsel.

The costs of shipping and handling are not recoverable in this district. Boyadjian v. Cigna Cos., 994 F. Supp. 278, 281 (D.N.J. 1998) (denying costs of postage because they are not listed in § 1920); Bollitier v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers, 735 F. Supp. 623, 629 (D.N.J. 1989) (denying taxation of costs of mailing); Hurley, 1996 WL 549298, at *4 (D.N.J. Sept. 17, 1996) (postage, delivery and messenger services fall under attorney's fees, not § 1920).

With regard to rough ASCII, several courts have denied the taxation of the costs of ASCII disks as being duplicative and merely for the convenience of counsel, particularly where regular deposition copy was also received. Harkins v. Riverboat Servs., Inc., 286 F. Supp. 2d 976, 980-81 (N.D. Ill. 2003); Nugget Distrib. Coop. of Am., Inc. v. Mr. Nugget Inc., 145 F.R.D. 54, 58 (E.D. Pa. 1992); Feinshreiber v. United States, No. 01-3628-Civ, 2002 WL 31084156, at *2 (S.D. Fla. Aug. 12, 2002).

18

The same is true with regard to the other fees for rough drafts, condensed transcripts, Realtime technology, media packages and keyword indices, included in the movant's invoices. Absent a showing of necessity, these types of litigation support costs are deemed to be for the convenience of counsel and therefore not taxable under § 1920 (2).  See e.g., United States ex rel. Davis, 829 F. Supp. 2d at 339 (denying costs of transcript drafts and realtime transcript services); Burton v. R.J. Reynolds Tobacco Co., 395 F.Supp.2d 1065, 1080 (D. Kan. 2005) (disallowing charges for keyword indices, ASCII disks, minuscripts, exhibits, postage and delivery); Lewis v. D.R. Horton, Inc., 375 F. App'x 818, 828-30 (10th Cir. 2010) (affirming district court's cost award in which it deducted deposition costs of condensed transcript and computerized transcripts); Kidd v. Mando Am. Corp., 870 F. Supp. 2d 1297, 1299 (M.D. Ala. 2012) (deposition costs of condensed transcript, rough ASCII transcripts and depo drive not shown to be necessary were not taxable).

The costs of exhibits too are generally considered to be for the convenience of counsel, who usually has a copy of exhibits in hand, and thus, non-compensable.  Scallet v. Rosenblum, 176 F.R.D. 522, 529 (W.D.Va. 1997).  Moreover, Lilly has failed to provide sufficient information to carry its burden of showing that the exhibits fall within the ambit of § 1920. Romero, 270 F.R.D. at 202 (denying copying and printing costs for lack of itemization by movant of how copied documents constituted taxable costs).  Plaintiff has provided no description of the exhibits or their use.

Finally, the inflated costs for expedited services are usually disallowed also as being for the convenience of counsel.  See, e.g., Suchite v. Kleppin, No. 10-21166-CIV, 2012 WL 1933555, at *5 (S.D. Fla. Mar. 23, 2012); Feinshreiber, 2002 WL 31084156, at *2 (applying a

19

more reasonable rate than requested expedited deposition transcript rate and allowing only $184.80 instead of $477.60).  The Clerk notes that the rate charged for most of the depositions was either the "expedited" rate of $8.50 per page or the "2 day delivery" rate of $8.95 per page.  In such cases, with the few exceptions noted below, the Clerk reduces the rate to the regular prevailing rate of $4.75 per page, as indicated in the invoices for the Jadeja and Fullem depositions.

  Lilly argues that "[e]xpedited transcripts for the depositions of Dr. Berridge, Mr. Goolkasian, Dr. Sallee, Dr. Staller, Dr. Hinshaw, and Dr. Shukla were particularly necessary in view of the impending expert discovery deadline on April 17, 2009, and the deadline for dispositive motions on May 13, 2009 (D.I. 282)."  Pl.'s Reply at 4.  Plaintiff notes that this Court has recognized the necessity of expedited transcripts in the face of court-ordered deadlines.  Janssen Pharmaceutica N.V. v. Mylan Pharms., Inc., Civ. A. Nos. 03-6220, 03-6185, 2007 WL 925535, at *8 (D.N.J. Mar. 23, 2007).  All of these depositions were taken between March 20 and April 17, 2009, just prior to or on the final deadline set by the Court.  The original expert discovery deadline of end 2008 was extended three times, twice by the consent of the parties, who indicated the need to adjust the discovery deadlines to address the substantive issues of this complex patent litigation.  [Dkt. Entries 109, 192, 266, 267, 282].  Moreover, the May 13, 2009 deadline for dispositive motions was looming and Lilly filed motions for summary judgment of no inequitable conduct [Dkt. Entry 292], no anticipation [Dkt. Entry 298], and infringement [Dkt. Entry 299] on that date.   Therefore, the Clerk agrees that expedited transcripts of these deponents were necessary and will grant the transcript costs as charged.

20

Applying the above deductions, the Clerk taxes the deposition transcripts as follows:

| **Deponent** | **Taxed Amount** |
|---|---|
| [Dkt. Entry 749-6] | |
| | |
| **Craig Berridge, Ph.D.** | |
| Transcript (295 pp. @ $8.50/p.) | $  2,507.50 |
| Reporter's Appearance | $     150.00 |
| | |
| **James R. Johnson, Ph.D.** | |
| Transcript (288 pp. @ $4.75/p.) | $  1,368.00 |
| Reporter Appearance | $     225.00 |
| | |
| **Thomas Spencer, M.D.** | |
| Transcript copy (161 pp. @ $2.75/p.) | $     442.75 |
| | |
| **Corinne Hogan** | |
| Transcript | $  1,575.65 |
| | |
| **Kalpana Rao Vanam** | |
| Transcript (160 pp. @ $4.75/p.) | $     760.00 |
| Reporter Appearance | $     150.00 |
| | |
| **Ellen Gettenberg** | |
| Transcript (214 pp. @ $4.75/p.) | $  1,016.50 |
| Reporter Appearance | $     150.00 |
| | |
| **P.V. Ramprasad Reddy** | |
| Transcript (223 pp. @ $3.75/p.) | $     836.25 |
| Reporter Appearance | $     352.50 |
| | |
| **Kevin Shanley** | |
| Transcript (282 pp. @ $4.75/p.) | $  1,339.50 |
| Reporter Appearance | $     150.00 |
| | |
| **David Wargo** | |
| Transcript (116 pp. @ $4.75/p.) | $     551.00 |
| Reporter Appearance | $       75.00 |
| | |
| **Dr. Abhay Muthal** | |
| Transcript (270 pp. @ $4.75/p.) | $  1,282.50 |
| Reporter Appearance | $     407.00 |

| **Deponent** | **Taxed Amount** |
|---|---|
| **Joseph Biederman, M.D.** | |
| Transcript copy (192 pp. @ $2.75/p.) | $     528.00 |
| **John T. Goolkasian** | |
| Transcript (303 pp. @ $5.25/p.) | $  1,590.75 |
| Reporter Appearance | $     150.00 |
| **Floyd R. Sallee, M.D., Ph.D.** | |
| Transcript (334 pp. @ $5.25/p.) | $  1,753.50 |
| Reporter Appearance | $     225.00 |
| **Jud A. Staller, M.D.** | |
| Transcript (289 pp. @ $8.50/p.) | $  2,456.50 |
| Reporter Appearance | $     225.00 |
| **Stephen P. Hinshaw, Ph.D.** | |
| Transcript (348 pp. @ $8.95/p.) | $  3,114.60 |
| Reporter Appearance | $     225.00 |
| **Atul Shukla, Ph.D.** | |
| Transcript  (323 pp. @ $8.50/p.) | $  2,745.50 |
| Reporter Appearance | $     150.00 |
| **Total:** | **$ 26,503.00** |

Combining the allowed costs of $2,862.00 for trial transcripts and $26,503.00 for deposition transcripts, the Clerk taxes a total of **$29,365.00**, pursuant to § 1920 (2).

### III.   Fees for Witnesses, § 1920 (3)

Lilly requests witness fees, pursuant to § 1920 (3), in connection with the six-day attendance at trial of its expert witness on issues of validity, Dr. Steven Pliszka, a resident of Texas.  The total requested cost of $1,150.00 consists of a $240 statutory attendance fee (6 days x $40/day) and subsistence allowance of $910 (7 nights of hotel accommodations x $130/night).

Local Civil Rule 54.1(g) incorporates 28 U.S.C. § 1821 by reference, and therefore, allowable witness fees are controlled by § 1821:

(1) The fees of witnesses for actual and proper attendance shall be allowed, whether such attendance was voluntary or procured by subpoena. The rates for witness fees, mileage and subsistence are fixed by statute (see 28 U.S.C. § 1821). Witness fees and subsistence are taxable only for the reasonable period during which the witness was within the District. Subsistence to the witness under 28 U.S.C. § 1821 is allowable if the distance from the courthouse to the residence of the witness is such that mileage fees would be greater than subsistence fees if the witness were to return to his or her residence from day to day.

L. Civ. R. 54.1(g) (1).

Section 1821 of Title 28 provides for the payment of witnesses' fees and allowances for their attendance in federal court. 28 U.S.C. § 1821(a) (1). Subsection (b) therein allows a $40 per day attendance fee "for the time necessarily occupied in going to and returning from the place of attendance at the beginning and end of such attendance or at any time during such attendance." Subsection (d) allows for a subsistence fee for a required overnight stay, provided that the per diem rate does not exceed the allowance established by the Administrator of General Services ("GSA"), pursuant to 5 U.S.C. § 5702(a), in the area of attendance. The applicable GSA per diem rate for the Newark area, during May, 2010, was $130 for lodging.[5]

Dr. Pliszka testified only during two days of the trial, on May 25 and 26. Plaintiff asserts that "[i]n addition, it was necessary for Dr. Pliszka to attend trial on May 18, 19, 24, and 27, 2010, in order to observe the testimony of Defendants' corresponding expert witnesses on validity." Pl.'s Br. at 5, n. 4.

Defendants counter that L. Civ. R. 54.1(g) (1) permits the recovery of witness fees only for "actual and proper attendance." Defs.' Br. at 7, and that Dr. Pliszka's observation of the trial

---

[5]     Section 1821 also provides for the actual expenses of travel, at subsection (c) therein, and for meals, at subsection (d), which applies the GSA rates that include meals and incidental expenses, then $61 per diem. However, these expenses were not requested in this application.

during the four days on which he did not testify was not "actual and proper attendance."  They would limit witness fees to two days of the $40 statutory fee ($80) plus three nights of hotel accommodations ($390) or a total of $470.  Defs.' Br. at 7.

The United States Supreme Court has interpreted "attendance" in § 1821 to mean "necessary attendance."  Hurtado v. United States, 410 U.S. 578, 583-87 (1973).  A witness is in necessary attendance in court when he is ready and available to testify.  Id. at 584.  A party may recover witness fees for days on which the witness attended the trial before actually testifying, but only if the witness was holding himself available to testify.  Louisiana Power & Light Co. v. Kellstrom, 50 F.3d 319, 335 (5th Cir. 1995) (citing Nissho-Iwai Co., Ltd. v. Occidental Crude Sales, Inc., 729 F.2d 1530, 1552-53 (5th Cir. 1984)).

A scenario similar to that here at issue existed in Pan Am. Grain Mfg. Co. v. Puerto Rico Ports Auth., 193 F.R.D. 26 (D.P.R. 2000), aff'd, 295 F.3d 108 (1st Cir. 2002).  The prevailing defendant sought $120 for three days of statutory witness fees, even though the witness only testified on two days.  The court indicated that the relevant inquiry was the witness' role on the day that he did not testify.  The movant had indicated that the witness was "available for consultation during the three days."  Id. at 36.  The court stated that "[a]ttendance for the purpose of consultation is not necessary attendance  within the meaning of 28 U.S.C. § 1821(b)."  Id. The same analysis was used to reduce the requested $360 witness fee for another witness who attended trial on nine days, testifying on only one day and being available for consultation on the other eight days.  The court reiterated, "statutory attendance fees exist to compensate witnesses for their attendance at trial, not to compensate experts for their advice."  Id.  For both witnesses, the court applied the $40 per diem fee only to those days on which the witnesses testified and to the days dedicated to traveling to and from the courthouse.

Lilly explained the necessity of Dr. Pliszka's attendance as follows: "Dr. Pliszka attended trial on these days because his expert testimony, as well as the determination whether to recall Dr. Pliszka to testify in rebuttal to Mr. Boghigian and Dr. Staller (Defendants' corresponding expert witnesses on validity), necessarily depended upon the testimony of Defendants' witnesses." Pl.'s Reply at 5.

Mr. Boghigian and Dr. Staller testified on May 27, the day following Dr. Pliszka's two days of testimony. [Dkt. Entry 632]. Therefore, the Clerk appreciates the necessity of Dr. Pliszka's attendance on May 27, as well as May 25 and 26. However, his attendance on May 18, 19 and 24 was, in the Clerk's view, to make himself available for consultation, not to testify. In addition to these three days of necessary attendance at trial, § 1821(b) allows an attendance fee for the days spent traveling to and from the courthouse. Therefore, an additional two days must be permitted for Dr. Pliszka's travel to and from Texas. Accordingly, the Clerk allows a statutory attendance fee of $200 (5 x $40) for these five days.

Also taxable are subsistence fees for the period during which Dr. Pliszka was reasonably within the District. L. Civ. R. 54.1(g) (1). Dr. Pliszka's presence in Newark would have been necessary from the evening of May 24 through possibly, the morning of May 28, considering that the trial concluded at 2:00 PM on May 27. Therefore, the Clerk grants subsistence fees covering hotel accommodations for four nights at the GSA rate of $130 per diem, or a total of $520. Combining this with the $200 statutory attendance fee, the Clerk taxes a total of **$720** in witness fees.

### IV.   Fees for Exemplification and Copies, § 1920 (4)

### A.  Certified Documents

Lilly seeks the $311.70 cost of obtaining certified copies of the patent-in-suit, and the file

history and assignment records for the patent-in-suit.  Burwell Cert. at ¶8.

The costs of making copies are taxable where the copies are "necessarily obtained for use in the case."  28 U. S. C. § 1920 (4).  Our local court rule imposes a two-part condition for the taxation of copies:

> The fees for exemplification and copies of papers are taxable when (A) the documents are admitted into evidence or necessarily attached to a document required to be filed and served in support of a dispositive motion, and (B) they are in lieu of originals which are not introduced at the request of opposing counsel.  The cost of copies submitted in lieu of originals because of convenience to offering counsel or his or her client is not taxable.  The cost of copies obtained for counsel's own use is not taxable.

L. Civ. R. 54.1(g) (9).

However, this Court has previously allowed the taxation of the cost of copies without strict adherence to the dual requirements of L. Civ. R. 54.1(g) (9).  In Hurley, the court noted that departure from the local rule would be permissible, although only to the extent consistent with § 1920 (4). 1996 WL 549298, at *3 n.5.  See also Thabault, 2009 WL 69332, at *13-14; Reichhold, 2009 WL 3761828, at *4.  This is, in fact, the analysis performed by the Third Circuit in the In Re Baby Foods case when it reconciled apparent conflicts between the local court rule and § 1920 (2).

Defendants argue that this cost should be denied in its entirety because the patent and assignment were not contested in this matter.  Defs.' Br. at 8.

The Clerk finds that these copies were necessarily obtained because at the time they were procured, Plaintiff did not know whether Defendants would challenge the authenticity of the patent or the assignment records.  Moreover, copies of these documents were admitted into evidence.  Pl.'s Reply at 5.  Therefore, this **$311.70** cost is taxed.

### B.   Costs of Printing and Photocopying by Outside Vendor

Lilly wishes to recoup the $24,820.96 cost of printing and copying done by an outside vendor.[6]  Plaintiff explains that this expense "includes the cost of copies of deposition transcript designations and materials for witness binders submitted to the court and provided to opposing counsel, as well as ordinary copying expenses reasonably incurred in the trial of this complex patent case."  Pl.'s Br. at 6, n.6.

Defendants object that Lilly has not met its burden of satisfying the two prerequisites of L. Civ. R. 54.1(g) (9).  Defs.' Br. at 8.  However, as discussed above, this Court requires only satisfaction of the test of § 1920 (4), i.e., that the copies have been "necessarily obtained for use in the case."

The Clerk must determine the reason for these materials and deny taxation if they were made merely for counsel's convenience.  Thabault, 2009 WL 69332, at * 13-14.  Defendants maintain that Lilly's justification that the photocopies were made for inclusion in witness binders is insufficient.  Id. at 8-9.  The purpose of these prints and copies is evident from the internal notations made by Plaintiff's counsel on its disbursement sheets.  [Dkt. Entry 749-9].  These notations indicate that the color prints and blowbacks were copies of trial exhibits and deposition designations, materials for witness binders, and copies for witnesses during the trial.  Id.  Copies of the deposition transcript designations, which are voluminous and fill about 150 pages of the

---

[6]       Arguably, some of these costs, i.e., the costs of printing the 8 x 11 color sheets for exhibits, may technically fall within § 1920 (3), rather than § 1920 (4).  Section 1920 (3) does not, by its terms, require a finding that the prints be "necessarily obtained for use in the case."  While most courts have not made the distinction between "printing" in § 1920 (3) and "making copies" in §1920(4), in Santana v. RCSH Operation, LLC, the court pointed out that, unlike § 1920 (3), § 1920 (4) requires a showing that the photocopies were necessary for use in the case.  No. 10–61376–CIV., 2012 WL 3779013, at *7, n.4 (S.D. Fl. Aug. 31, 2012).  Under either analysis, as discussed below, the Clerk finds that the costs of the prints are taxable.

Final Pretrial Order, [Dkt. Entry 566] at 363-510, as well as materials for witness binders, were submitted to the Court and to opposing counsel.  Thus, they were necessary for use in the case and were not merely for the convenience of Lilly's counsel.  As for the copies made for witnesses during trial, as stated in <u>Thabault</u>, "outside vendor costs for trial photocopying represent ordinary litigation expenses reasonably incurred in the prosecution of this massive, complex litigation, and were not merely for counsel's convenience.  <u>Id.</u> at 14.  While the litigation of the <u>Thabault</u> case, which exceeded twenty years in length, was more protracted than this case, the Clerk finds that this was, indeed, a complex patent suit.

Defendants further argue that the rate per page is often excessive.  Defs.' Br. at 8-9.  All of the black and white copies were billed at the rate of $.07 or $.08 per page and the Clerk concludes that these rates are reasonable.  In the case of <u>Interfaith Cmty. Org.,</u> the Third Circuit noted that most courts find the rate of $.10 to $.15 per copy to be appropriate and pointed out the $.10 per page rate used by the Third Circuit, L.A.R. 39.3(c).  426 F.3d at 717.  The Circuit Court also commented that color copies are obviously more expensive than black and white ones.  <u>Id.</u> at n.20.  The Clerk finds the rate of $.99 charged per 8" x 11"color print in this case to be acceptable as well, as Defendants have not shown this rate to be exorbitant or outside the range of market price.

The invoices submitted by Lilly include fees for tabs and binders in addition to the costs of prints and photocopies.  These charges constitute attorney's overhead and as such, are not taxable.  <u>Yong Fang Lin v. Tsuru of Bernards, LLC</u>, Civ. A. No. 10-2400, 2011 WL 2680577, at *5 (D.N.J. July 8, 2011) (disallowing cost of exhibit binders as general overhead cost); <u>Laura P. v. Haverford School Dist.</u>, Civ. A. No. 07-5395, 2009 WL 1651286, at *9 n.10 (E.D. Pa. June 12, 2009) (same); <u>Close-Up Int'l, Inc. v. Berov</u>, Civ. A. No. 02-CV-2363,

2007 WL 4053682, at *11 (E.D.N.Y. Nov. 13, 2007) (denying costs of trial exhibit binders and tabs as being subsumed in attorney's fees) and cases cited therein.

Based upon the foregoing, the Clerk allows the cost of all prints, blowbacks, and copies but denies the cost of all tabs and binders.  In sum, the following costs, listed by invoice date, are taxed:

| **Invoice Date** | **Taxed Amount** (incl. 6% or 7% sales tax) |
|---|---|
| 05/12/10 | $ 5,756.92 |
| 05/14/10 | $ 5,837.50 |
| 05/18/10 | $ 3,108.05 |
| 05/19/10 | $ 1,162.00 |
| 05/21/10 | $ 1,665.85 |
| 05/24/10 | $ 1,323.11 |
| 05/25/10 | $ 1,253.15 |
| 05/26/10 | $ 2,720.96 |
| **Total:** | **$22,827.54** |

### C.   Costs of "Exemplification"

Lilly requests reimbursement of the combined $247,716.25 cost of designing, creating and displaying demonstrative exhibits during trial.  Of this total, the cost of visual aids or demonstrative evidence is $31,303.75 and the balance of $216,412.50 is for "on-site support."  Lilly also seeks the $2,254.49 cost of equipment rental.  If taxable, these costs could only plausibly fit within the category of "exemplification," under § 1920 (4).

Unfortunately, to date, the Third Circuit has neither defined nor applied the term "exemplification" in the context of § 1920 (4).  In the recent case of Race Tires Am., Inc.

29

v. Hoosier Racing Tire Corp., the Third Circuit side-stepped this issue, in addressing

the taxability of an electronic discovery vendor's services, which it treated as potential "copies,"

within the meaning of § 1920 (4).  674 F.3d 158 (3d Cir.), cert.denied, 133 S. Ct. 233 (2012).

In doing so, it noted the divergence in its sister circuits on this topic, with the Seventh Circuit

applying a broader definition than the Sixth and other Circuits.

      In the case of Cefalu v. Village of Elk Grove, 211 F.3d 416 (7th Cir. 2000), the Seventh

Circuit adopted the ordinary meaning of the term as the "act of illustration by example," Id. at

427, and awarded the $27,000 cost of a computerized multi-media system used to present

exhibits to the jury.  The circuit court rejected the district court's distinction between the physical

preparation of trial exhibits, which it deemed taxable  as exemplification, and the means of

presenting exhibits to the jury, which it found did not qualify as exemplification.  In reversing

the district court, the circuit court stated, "[a]llowing fees for the cost of preparing the

transparency but not for renting the projector would in this sense be a highly formalistic

distinction, as each is key to the illustrative function of the exhibit."  Id. at 428.  It held,

"[s]o long as the means of presentation furthers the illustrative purpose of an exhibit, we believe

it is potentially compensable as exemplification."  Id.

      By contrast, in Kohus v. Toys "R" Us, Inc., 282 F.3d 1355 (Fed. Cir. 2002), the Federal

Circuit, applying Sixth Circuit law, adopted the narrow definition found in Black's Law

Dictionary 593 (7th Ed. 1999) of "[a]n official transcript of a public record, authenticated as a

true copy for use as evidence."  Id. at 1359.  It held that a video exhibit that depicted the

allegedly infringing product did not constitute "exemplification," and denied its $12,950 cost.

      In the aftermath of the Crawford Fitting case, the Federal Circuit has also predicted that

the First and Eighth Circuits would apply the narrow interpretation of "exemplification."

Summit Tech., Inc. v. Nidek Co., 435 F.3d 1371, 1377-78 (Fed. Cir. 2006) (denying all costs of trial exhibits, including computer animations, videos, Powerpoint presentations, and graphic illustrations); Kinzenbaw v. Case LLC, No. 05-1483, 2006 WL 1096683, at *3-4 (Fed. Cir. Apr. 26, 2006) (denying not only costs of trial consulting service, but of physical models and trial boards because they did not fall within the narrow definition of Black's Law Dictionary).

        Lacking a directive from the Third Circuit, the Clerk must take cues from both the United States Supreme Court's most recent application of § 1920 in the Taniguchi case, and the Third Circuit's analysis in the Race Tires case.  Both cases evince a clear intent to pull the reins back on runaway cost awards.  However, the Clerk is disinclined to adopt a definition as restrictive as that in Black's Law Dictionary, thereby virtually eliminating the costs of all demonstrative evidence.  On the other hand, certain qualifications to the broader definition of that which "furthers the illustrative purpose" appear warranted.

        As noted above, in Taniguchi, the Supreme Court concluded that the provision in § 1920 (6) for the "compensation of  interpreters" allowed the costs of oral translation, but not document translation.  To define "interpreters," the Court first examined definitions in commonly used dictionaries, like the American Heritage Dictionary and the Oxford English Dictionary, stating that "[w]hen a term goes undefined in a statute, we give the term its ordinary meaning."  132 S. Ct. at 2002.  The Court looked for the sense of the word that was "more natural."  Id. at 2004.  Applying this type of analysis to the present case, the Clerk adopts the ordinary, more natural definition of "exemplification," used by the Seventh Circuit, as that which serves an illustrative purpose, and not that in Black's Law Dictionary.

        In its discussion, the Taniguchi Court reiterated its restrictive reading of § 1920 that it enunciated fifteen years earlier in the Crawford Fitting  case:

> [W]e have never held that Rule 54(d) creates a presumption of statutory
> construction in favor of the broadest possible reading of the costs
> enumerated in § 1920.  To the contrary, we have made clear that the
> "discretion granted by Rule 54(d) is not a power to evade" the specific
> categories of costs set forth by Congress. <u>Crawford Fitting</u>, 482 U.S.,
> at 442.  "Rather," we have said, "it is solely a power to decline to tax,
> as costs, the items enumerated in § 1920." <u>Ibid.</u>

132 S. Ct. 2006.  In <u>Crawford Fitting</u>, the Supreme Court had denied the recovery of expert

witness fees under § 1920 (3), in excess of the statutorily authorized amounts of § 1821.

482 U.S. 437.

Similarly, in the <u>Race Tires</u> case, the Third Circuit cited the Supreme Court's prior

observation that "'Congress meant to impose rigid controls on cost-shifting in federal

courts,'" 674 F.3d at 164 (quoting <u>Crawford Fitting</u>, 482 U.S. at 444), and criticized taxation

decisions that are "untethered from the statutory mooring."  674 F.3d at 169.

The <u>Race</u> Tires case concerned an electronic discovery consultant's charges for

collecting, preserving, processing and indexing electronically stored information ("ESI"),

keyword searching of ESI, file conversion and scanning paper documents to create electronic

images.  <u>Id.</u> at 167.  Preliminarily, the Court concluded that these charges did not qualify as fees

for "exemplification" under § 1920 (4) because they did not arise from the production of

illustrative evidence or authentication of public records, the two definitions of exemplification

discussed above, given by the Seventh and Sixth Circuits, respectively.  <u>Id.</u> at 166.

The Court then considered whether these expenses were taxable as the "cost of making

copies of any materials" under § 1920 (4).  The Court dispelled arguments in favor of taxation

simply based upon the necessity of experts due to the highly technical nature of ESI and the

resulting cost-savings.  It reasoned that the services leading up to the production of electronic

copies did not constitute "making copies" and held that only the costs of scanning hard copy

documents, converting native files to TIFF and transferring VHS tapes to DVD were recoverable

as the costs of making copies under § 1920 (4).  Id.  at 171.

In reaching its decision, the Third Circuit distinguished between the intellectual effort

required to produce documents and the actual physical preparation thereof and concluded that it

was possible to isolate the costs incurred just for the physical preparation of ESI.  It relied upon

the Ninth Circuit's decision in Romero v. City of Pomona, 883 F.2d 1418 (9th Cir. 1989),

overruled in part on other grounds by Townsend v. Homan Consulting Corp., 929 F.2d 1358,

1363 (9th Cir. 1991) (en banc), from which it quoted:

> As expressed by one court, "[s]ection 1920 (4) speaks narrowly of '[f]ees for
> exemplification and copies of papers,' suggesting that fees are permitted only
> for the physical preparation and duplication of documents, not the intellectual
> effort involved in their production."  *Romero v. City of Pomona,* 883 F.2d 1418,
> 1428 (9th Cir. 1989), *overruled in part on other grounds by Townsend v. Holman
> Consulting Corp.*, 929 F.2d 1358, 1363 (9th Cir. 1991) (en banc).  Neither the
> degree of expertise necessary to perform the work nor the identity of the party
> performing the work of "making copies" is a factor that can be gleaned from
> § 1920 (4).

Race Tires, 674 F.3d at 169.  The Race Tires ruling was a ground-breaking decision which is

perhaps the most restrictive in the country on the reimbursement of e-discovery costs.  Mark L.

Austrian, *Taxation of Costs and Offer of Judgment*, SU004 A.L.I.- A.B.A. 419 (2012).

In the Romero case, the Ninth Circuit denied the $146,926.94 cost of expert research

expenses incurred in assembling and preparing the contents of the movants' trial exhibits.

The court limited § 1920 (4) exemplification to the actual physical production of the exhibits,

reasoning that "[w]ere the term exemplification read any broader, it could well swallow up

other statutory provisions of the Code and rules, such as the prohibition against the award of

attorney's fees or expert witness fees in the normal case," such as the limited statutory witness attendance fee of § 1821, then $30. 883 F. 2d at 1428. It continued, "[t]his is because any document 'necessarily produced' for purposes of the litigation will contain somebody's intellectual input, be it a lawyer, an expert witness or a lay witness." Id.

In a very recent case applying the Romero standard adopted by the Third Circuit, the court denied the $5,516 cost of "design services" used to create the demonstratives, stating that the costs of the intellectual effort in designing demonstratives are not taxable. IMRA America, Inc. v. IPG Photonics Corp., No. 06-15139, 2012 WL 6553523, at *5 (E.D. Mich. Dec. 14, 2012). The court cited this Court's prior recognition in the Merck case, 2010 WL 1381413, at *5, that demonstratives are especially necessary to the understanding of intellectual property cases, and therefore, may be necessarily obtained for use in the case, but limited the costs to those resulting from the physical preparation of demonstratives. 2012 WL 6553523 at *5.

The Romero holding was also the basis for denying the $57,185 cost of an animation which the opponent argued was a disguised expert witness fee in Pinasco v. California, No. CIV S 09-0777, 2012 WL 6589801, at *2 (E.D. Cal. Dec. 17, 2012). The court noted that the entire expense was itemized as either "retainer" or "fees for preparation" and stated that "[r]etainers and fees are the very 'intellectual efforts' the Romero court found to be outside the scope of exemplification costs permitted by 28 U.S.C. § 1920." Id.

Other courts which have analyzed the "exemplification" issue by contrasting the physical preparation of demonstrative exhibits with the intellectual effort required to create exhibits have denied the costs of technical support as well as equipment rental. See, e.g., Plantronics, Inc. v. Aliph, Inc., No. C 09-01714, 2012 WL 6761576, at *9-10 (N.D. Cal. Oct. 23, 2012) (disallowing

34

$7,257.30 cost of technical support and equipment rental to present visual aids during Markman

hearing) and cases cited therein.

The Clerk previously declined to apply the Romero holding and allowed the entire cost

of visuals in the case of In re Jacoby Airplane Crash Litigation, Civ. A. No. 99-6073, 2008 U.S.

Dist. LEXIS 118037, at *18-19 (D.N.J. Oct. 7, 2008).  However, now, due to the Third Circuit's

espousal of the Romero dichotomy in the Race Tires case, the Clerk is compelled to deny the

costs, or "fees" and "retainers" incurred in the intellectual effort that precedes the actual physical

preparation of demonstratives.  As the Romero court observed, prevailing parties may not "shift

their expert witness costs to [the losing party] under the guise of exemplification costs."

914 F.2d at 1428. Violations of this principle would fly in the face of the Supreme Court's ruling

in the Crawford Fitting case, restricting expert fees to those nominal amounts set forth in § 1821.

Our local court rule also shows a clear intent to restrict the costs of demonstratives:

> The **reasonable** expense of **preparing** visual aids including, but not limited to,
> maps, charts, photographs, motion pictures and kindred material, is taxable as
> costs when such visual aids are admitted into evidence.  It is advisable to obtain
> a court order at a pretrial conference before incurring the expense of preparation
> of such visual aids.  Expenses incurred in the preparation of models are not taxable
> as costs even though the models are admitted into evidence without obtaining a
> court order before incurring the expense.

L. Civ. R. 54.1(g) (10) (emphasis added).  Several safeguards against excessive costs are built

into this rule, i.e., the requirements that the expenses be reasonable and that the visual aids have

been admitted into evidence and the recommendation of obtaining prior court approval.

Most importantly, the rule speaks in terms of "preparing" visual aids and thus, reflects the

Romero distinction between physical preparation and intellectual efforts.

With all of this in mind, the Clerk turns now to the costs of visual aids, "on-site support,"

and equipment rental, of which Lilly seeks taxation.

*Visual Aids*

The Resonant Legal Media invoices of May 18, 2010 and June 18, 2010 [Dkt. Entry 749-10], supporting Lilly's request to tax visual aids in the amount of $31,303.75, show just the following four descriptions: "Communication Design," "Develop Illustrations," "3D Brain Model," and "Create 3D renderings of the brain and it's [sic] different regions." With the exception of the one entry on the June 18 invoice for the "3D Brain Model," which is described therein as "Matter Expenses," all other charges are described as "Professional Fees."

Based upon the foregoing analysis of Race Tires, Romero, and its progeny, the Clerk must deny all of these costs, except the $1,660.00 expense of the physical preparation of the "3D Brain Model." As noted in IMRA America and Pinasco, the professional fees for design and development are akin to expert fees and constitute the intellectual effort rejected in Romero and Race Tires as well. The Clerk allows the cost of the 3D model, even though Lilly has not proven that it obtained a court order prior to incurring this expense, as required by L. Civ. R. 54.1(g) (10). The broader requirement of § 1920 (4) that the demonstrative have been "necessarily obtained for use in the case" prevails over the limitations of our local court rule. In re Baby Food Antitrust Litig., 166 F.3d at 138. The Clerk appreciates the necessity of such model in this case involving a patent for methods of treating ADHD. Accordingly, the Clerk taxes visual aids in the amount of **$1,660.00**.

*On-Site Support*

As Defendants state, "Lilly seeks costs for *five* on-site trial technicians and their equipment—all told, a whopping $216,412.50 for 'on site support.'" Defs.' Br. at 10 (emphasis in original). The June 18, 2010 invoice submitted by Plaintiff shows fees for "on-site support"

36

by five technicians on every day from May 12 through 19, 2010, three technicians from May 20

through 22, and four technicians from May 23 through 26.  [Dkt. Entry 749-10].  The hours

worked by each technician, as shown on the invoice, exceed 10 hours per day on most days and

one individual is shown to have worked more than 17 hours on two days.  Per the invoice, these

five technicians worked a combined 69.5 hours on May 17 alone.  Four of the five technicians

were charged at the rate of $250 per hour and the fifth technician was billed at $325 per hour.

The Clerk agrees with Defendants that Lilly's request is exorbitant and has trouble

fathoming how so much manpower was necessary to display Plaintiff's visual aids during a

trial that lasted only about 37 hours.  [Dkt. Entries 627-32].  The Court's Order approving the

use of audio-visual equipment in the courtroom lists just computer monitors, laptops, projector

and stands, screen, visualizer, speakers, printer, tables and accessories, such as cables and

adapters.  [Dkt. Entry 626].  The Court's Order provides for the equipment to arrive only on

May 14 and yet, Plaintiff's invoice shows "on-site support" for May 10 through 13.  Clearly,

the "on-site" to which the invoice refers is not limited to the courtroom.

In any event, the Clerk must deny all of these fees as well.  Like the expenses for the

visual aids, these charges are listed in the June 18 invoice exclusively as "Professional Fees."

They are the costs of technical experts and were not incurred for the physical preparation of the

visual aids.  On the basis of the foregoing legal analysis, the Clerk disallows the entire

$216,412.50 cost.

*Equipment Rental*

Finally, Lilly seeks taxation of the $2,254.49 cost of renting the equipment listed in the

Court's Order approving the display of the trial demonstratives in the courtroom.  Burwell Decl.

at ¶ 11.  Plaintiff explains that "[t]he use of multimedia equipment for displaying demonstrative

37

exhibits was necessary in this case given the complexity of the scientific topics covered by the witnesses and the large quantity of exhibits admitted into evidence." Id.

In the Clerk's view, this type of cost is sui generis. It does not arise out of the actual physical preparation of demonstratives and was disallowed in the Plantronics case on that basis. 2012 WL 6761576, at *9-10.  Nor is it attendant to the intellectual effort behind the demonstratives or the equivalent of a disguised expert fee.   Therefore, granting this cost would not effectuate an end run around prohibited expert fees.  Furthermore, Defendants do not contest taxation of this necessary cost and it is modest in amount.  For these reasons, in the exercise of discretion, the Clerk allows this **$2,254.49** cost.

### D.  Total § 1920 (4) Costs Taxed

The total costs taxed pursuant to § 1920 (4) are:

Certified Documents:          $    311.70

Prints and Copies:            $22,827.54

Visual Aids:                  $  1,660.00

Equipment Rental:             $  2,254.49

**Total:**                    **$27,053.73**

### V.    Summary

In sum, the Clerk taxes the following costs in favor of Plaintiff and against Defendants:

Fees of the clerk, § 1920 (1):                    $     350.00

Fees for transcripts, § 1920 (2):                 $ 29,365.00

Fees for witnesses, § 1920 (3):                   $     720.00

Fees for exemplification and copies, § 1920 (4):  $ 27,053.73

**TOTAL:**                                        **$ 57,488.73**

For the reasons set forth above, the motion of Plaintiff Eli Lilly and Company to tax costs against Defendants Sun Pharmaceutical Industries Ltd., Sandoz Inc., Mylan Pharmaceuticals Inc., Apotex Inc. and Aurobindo Pharma Ltd. is hereby **GRANTED IN PART AND DENIED IN PART**.  An appropriate order follows.


WILLIAM T. WALSH, CLERK


By:  S/John T. O'Brien
              Deputy Clerk




January 22, 2013